## SMITH *vs.* THE STATE.

[INDICTMENT FOR RAPE.]

1. *Oath to jury ; recitals as to, what insufficient.*—In a criminal case, the omission of an essential portion of the oath required to be administered to the jury, apparent from the record, is a reversible error. The record shows such omission in this case.
2. *Particular acts of accused ; when can not generally be inquired into.*—The general rule is, that the prosecutor can not enter into an examination of particular acts of the accused, even when the latter has called witnesses in support of his general character.
3. *Rape, complaint as to ; what competent evidence to prove.*—In a prosecution for rape, the request of the female, alleged to have been injured, to the witness to go before a magistrate and report the offense, is competent evidence to prove complaint made.
4. *Election by State; may be required at any time before jury retire.* Where the indictment charges but one offense, and the evidence tends to prove several repetitions of it, the defendant may require the State to elect on which it will proceed at any time before the jury retire.
5. *Rape; duress as to ; definition of.*—Duress in a case of rape is a reasonable fear of serious personal injury, the age, sex, state of health, temper and disposition of the party, and other circumstances calculated to give greater or less effect to the violence or threats, being taken into consideration.

APPEAL from the Circuit Court of Wilcox.
Tried before Hon. P. O. HARPER.

THE appellant, Isaac Smith, (colored), was convicted of rape upon the person of his daughter, Judy Smith, and sentenced to the penitentiary for life.

The judgment entry, so far as it relates to the oath administered the jury, was as follows : "Thereupon came a

jury of good and lawful men, to-wit, John Moore and eleven others, who, being duly elected, tried and sworn and impanneled well and truly to try the issue joined between the State of Alabama and the prisoner at the bar, upon their oaths do say," &c.

The bill of exceptions states that Judy Smith was introduced as a witness in behalf of the State, and testified "that the defendant was her father, and that about three weeks before Christmas, 1870, at a gin-house in Wilcox county, Alabama, the defendant made her lie down, and he pulled up her clothes and got on her; and the solicitor asked her if the defendant penetrated her; and defendant's counsel objected to the question, because it was leading, and the court told her to go on and state what he did, and she went on and stated that defendant, by force, threw her down, and had his will of her against her consent; the court at the same time stating that the question put by solicitor was leading, and then the court told the witness to go on, &c., as above stated, and the defendant excepted to the ruling of the court; and she went on and stated that about two weeks after that time Isaac Smith came into the window where witness was sleeping, in the night, when her mother was gone and witness was alone, except some young children who were sleeping in another bed in the same room; that defendant got on the bed and attempted to have connection with witness, when witness jumped from the bed; defendant got up and got his knife, and said if witness would not yield to him he would cut her throat, and, fearing that if she did not yield, defendant would kill her, she consented, to save her life. This transaction was sworn to by a younger sister, who was lying in the same room on another bed, and heard the conversation; heard said Judy crying, and begging her father, said defendant, to desist; and further, that on Monday night, the 26th day of December, 1870, he whipped her and made her lie down again for him in the cotton patch, near his house, and both times he had connection with her, as well as he did at the gin-house. Upon cross-examination, she said, at the gin-house there was no one present, but the time two weeks

after her sisters were in the house at the time; and said it was late at night, and that it was in a negro quarter where there were three other families living, though not in the same house, and she supposed they were there, but did not see them, and the reason she did not halloo was that she was afraid of defendant.

"The State then introduced Irena Smith, who knew nothing of the gin-house scrape, but said that she heard her father tell Judy he would cut her throat if she did not let him do what he wanted to do with her, and that Judy consented, and that she heard him talking to Judy the night in the house and in the cotton patch, and that he whipped Judy with a stick and beat her with a fire shovel before she would consent to go with him, and that it was a month before she recovered from the injuries received at the hands of defendant to make her consent; that Judy said she was whipped into consent.

"The State then introduced two doctors, who said they were called to see Judy Smith, and found her suffering with pains in her side, and complaining of great soreness. The State then closed.

"The defendant introduced evidence tending to show that he whipped Judy Smith, on the 26th of December, 1870, because she stayed away from home three days with his horse; and that four weeks before, and it might have been six or seven weeks to Christmas, defendant went to an old negro to be cured of a venereal disease, in the first stages, and on Monday of the 26th of December, defendant was still bad off with the disease, but better than he was when he first went to the old negro to be cured."

The defendant then introduced medical witnesses who had attended him, who testified that his disease was most likely to be communicated to any female with whom he might have connection; but that it might be that he could have such connection and not communicate his disease. There was no evidence whatever as to whether Judy Smith had a venereal disease at any time.

"The defendant then introduced evidence tending to show that the character of Judy Smith was not good.

One witness proved that, and then the defendant introduced five or six witnesses who said they had known the defendant from ten to twenty years, and that she always had a good character, and that this charge was the first that they had ever heard against him ; and one of the witnesses who testified thus was the son of defendant's old mistress in slave times. The defendant then closed, and the State then introduced one Susan McLeod, an older sister of said Judy, to rebut defendant's good character, and she was asked as to one act of the defendant alone, and defendant objected. The court overruled his objection, and the defendant excepted. The defendant then crossed the witness, and asked her if she did not set this prosecution on foot. She said she did go to the justice and report the defendant ; and on being asked by defendant's counsel why she went and reported defendant, she answered that she went at said Judy's request, and because said Judy was afraid to go. Defendant then closed, and the State then asked her why she reported the defendant, and she went on to say that Judy Smith, the girl said to have been raped, asked her to go. This answer was given to the question by defendant's counsel as to why she went and reported the case to the magistrate, and defendant objected to her telling what Judy said. The court overruled the objection, and let her tell the jury all that Judy told her, and the defendant excepted to the ruling of the court. The State then introduced Dr. Smith to support Judy Smith, after being assailed by defendant; he said he knew her character as well as he did any girl of her condition, and that it was as good as any girl's character of her condition; that she had lived in his family. Defendant objected to this statement going to the jury as evidence of Judy Smith's good character; the court overruled the objection, and defendant excepted.

"This was all the evidence in the case. After the evidence was closed, and the solicitor had commenced his argument, and had spoken for several minutes, defendant moved to compel the solicitor to elect as to which time and transac-

tion he would ask for a conviction upon; which motion the court refused, and the defendant expected.

"The defendant asked the court to charge the jury—

"1. That duress is that state of the mind of the woman raped as induces her to believe that there is no assistance near to relieve her.

"2. That if they find from the evidence, that for four weeks before the twenty-sixth of December, 1870, defendant was diseased with the pock in the first stages, and the woman said to be raped had no pock at the time she complained, nor any other time since that time, that is a circumstance to be considered by the jury, as to whether she be entitled to credit or not.

"3. That the good character of defendant is sufficient to generate a doubt.

"The court refused the several charges asked, and the defendant excepted."

(Neither the docket nor record gives the name of appellant's counsel.)

JOHN W. A. SANFORD, Attorney-General, contra.—1. The court did not err in its refusal, after the entire evidence was before the jury, and the argument had commenced, to compel the solicitor to elect for what rape he was prosecuting. The defendant should have objected to the admission of the evidence of the several rapes.

2. The first charge asked by the defendant was properly refused. "The question is, did the prisoner have such intercourse, against the consent of the victim of his brutish passions, and by force. If he did, then he is guilty." Waller v. The State, 40 Ala. 325, 331, and authorities.

3. The charge asked in reference to the character of the accused was calculated to withdraw from the jury the consideration of all evidence other than that of character. The proof of good character may be sufficient to generate a doubt; the charge stated that it was sufficient, and, invading the province of the jury, it was properly refused.

4. Although the statement of the particulars of a rape

can not be given in evidence by third persons, unless it be of the *res gestæ*, there is nothing in the record to show the statements of Judy Smith to her sister were of this character. The record does not show what she said to her sister when she asked her to make the complaint before the magistrate. For aught that appears, they may have been about business engagements, her sickness, a fatigue, or any other cause that prevented her from seeking the officer. The appellant ought to have shown by his bill of exceptions of what he complained as wrongfully admitted testimony.

B. F. SAFFOLD, J.—The appeal is from a conviction and sentence for rape.

The record recites that the jury was "sworn and impanneled well and truly to try the issue joined between the State of Alabama and the prisoner at the bar." An essential portion of the oath required to be taken was omitted. *Joe Johnson v. The State*, 47 Ala. 9.

The question objected to as leading, is not so. It is a direct inquiry concerning the existence of an indispensable fact.

The general rule is, that the prosecutor can not enter into an examination of particular acts of the accused, even when the latter has called witnesses in support of his general character. Nothing appears in the record to show that the act inquired about is an exception.—Archb. Crim. Pl. p. 123, n. 4.

The declarations of the party charged to have been injured, which a witness was allowed to state, are not set out, beyond her request to the witness to go to the magistrate and report the offense. It was competent to prove that she made speedy complaint of the injury done her.

It was competent to sustain the general character of the female injured, which had been assailed by the defendant, especially as she was a witness.

The indictment charges but one offense, though the evidence tended to prove several repetitions of it. The rule in such a case is to hold the State to the act to which the

testimony relates, if it can be covered by the indictment. After the election is once made by offering evidence on the part of the State, it holds through all future stages.—*Elam v. The State*, 26 Ala. 48. This is necessary in order not to confuse the prisoner in his defense, and also to leave him subject to indictment for the other offenses. It can not prejudice the prosecution to require the election to be made at any stage of the trial before the jury retires, because some one act must be proved beyond a reasonable doubt.

It is not necessary to consider minutely the charges asked by the defendant which were refused. Whether proper or not, they lack precision of expression. For instance, it is not clear whether the last one means that the good character which the defendant had proved on the trial was sufficient to generate a doubt of his guilt, notwithstanding the evidence against him, or that the proof of good character may be such as to generate a doubt. The latter conforms to the rule in *Felix v. The State*, 18 Ala. 720. The second is defective in the expression of the time when the defendant was diseased. As to the first, duress, in a case of this kind, is a reasonable fear of serious personal injury ; the age, sex, state of health, temper and disposition of the party, and other circumstances calculated to give greater or less effect to the violence or threats, being taken into consideration.

The judgment is reversed, and the cause remanded.