St. Louis, Iron Mountain & Southern Railroad Company *v.* Stroud.

Opinion delivered April 29, 1899.

1. RAILROAD—EXPULSION FROM DEPOT—DAMAGES.—In a suit against a railroad company by one who went to its depot to board a train for the purpose of visiting his sick wife and child, seeking to recover damages for being wrongfully expelled therefrom, an instruction that the jury should allow plaintiff damages for the anxiety suffered by him on account of being kept from his wife and child was improper where the evidence showed that he was not prevented by such expulsion from going to see them, but that he voluntarily remained away. (Page 118.)

2. EVIDENCE—LETTER—GENERAL OBJECTION.—A general objection to the reading of a letter in evidence was properly overruled if a part of it was admissible. (Page 119.)

3. SAME—RELEVANCY.—In a suit against a railroad company to recover damages for the wrongful expulsion by its servant of a passenger from its depot, evidence of previous acts of misconduct on the part of such servant was irrelevant and inadmissible. (Page 120.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

STATEMENT BY THE COURT.

The complaint charged that on the night of January 17, 1895, the plaintiff went to the depot of defendant in North

Little Rock, for the purpose of taking a train to Hot Springs, to visit his sick wife and child; that he entered the depot waiting room provided for passengers, to wait for the train. While there, one Pat Gallagher, in the employ of the defendant as watchman, "entered said depot, and with a large club and pistol, recklessly, maliciously, forcibly, and wrongfully restrained and falsely imprisoned, and with violence and threats, and rough and brutal language, and with pistol drawn, assaulted and drove plaintiff out of the depot, and off the platform and away from the depot, and prevented plaintiff from taking said train." It further charged that watchman Pat Gallagher was an incompetent, unreliable and vicious person, unfit to fill the position entrusted to him by the defendant, all of which was well known to defendant, and had been so known to it for a long time prior thereto. It further charged that by reason of all of the above things plaintiff had suffered "great damage and humiliation to himself, and great suffering in anxiety on account of the condition of his wife and child, and great injury and suffering on account of said wrongful restraint, to his damage in the sum of $5,000.

The answer specifically denied each and every allegation of the complaint, and charged that, if plaintiff had suffered as alleged, it was the result of his own unlawful and improper acts in the premises, and from no fault of defendant.

There was a verdict for plaintiff of $4,000. Remittitur of $3,000, and judgment for $1,000. Defendant appealed.

*Dodge & Johnson,* for appellee.

The court erred in admitting evidence of collateral acts of Gallagher, and of the issues in a suit foreign to the one at bar and between different parties. 1 Greenleaf, Ev. § 52. The court erred in its charge to the jury. The jury can find in favor of the one holding the affirmative of an issue only when there is some preponderance of evidence in his favor. The existence of such preponderance and its degree are questions to be determined by the jury under proper instructions. 37 Ark. 164; 20 Ark. 600. The court erred in its instructions as to the measure of damages. Appellee could, in no event, recover

for any injury which he might have prevented by reasonable care. 38 Ark. 358. The verdict is excessive; and, being plainly the result of passion and prejudice, and rendered under erroneous instructions, it cannot be cured by a remittitur. 53 Ark. 11; 48 S. W. 222; 66 Ill. 71; 7 S. W. 497; 12 Johns. 236; 71 N. W. 715; 24 Mo. App. 334; 46 Mo. 310; 38 N. Y. 181; 18 N. Y. 512; 49 Pac. 436; 42 Am. & Eng. R. Cas. 136; 44 Kas. 410; 49 Pac.. 78; 91 Ga. 820; 46 Mo. App. 638; 16 S. W. 11; 70 Ga. 120; 7 S. W. 492; 5 Minn. 376; 17 Gratt. 366; 18 W. Va. 4; 11 Wis. 415; 43 Kas. 309; 68 Tex. 617; 49 Kas. 12; 37 Kas. 578; 49 Pac. 436.

*Hill & Auten,* for appellee.

The evidence of the bad reputation of the watchman, and the appellant's knowledge thereof, was competent. 58 Ark. 381. Also evidence of particular acts of wrongdoing on his part, as watchman, known to the appellant, prior to this injury. Deering, Ev. § 206; 10 Am. Rep. 111; 17 Am. Rep. 325. The court's instructions were correct. Appellant, having acted maliciously, is responsible for the anxiety of mind suffered by appellee on account of the supposed condition of his family. 53 Wis. 345; 7 Am. & Eng. Enc. Law, 691. In addition to compensatory damages, the jury could properly assess such amount against the railroad company as would restrain it from further acts such as the one complained of here. Suth. Dam. 719–723, 751–752; 15 Ark. 452; 35 Ark. 492; 42 Ark. 321; 56 Ark. 51; 58 Ark. 136.

*Hill & Auten,* for appellee, on motion for re-hearing.

If any part of the letter was competent evidence, it was not error for the court to overrule a general objection to it. Rice, Ev. 925, 926; Shinn, Pl. & Pr. § 895; 16 N. Y. 193; 20 Barb. 343; 38 U. S. 302; 26 U. S. 337; 44 U. S. 515, 530. There was no error in the 5th instruction, as to appellee's right to recover for anxiety and mental suffering. The damage was not too remote to be compensated. Sedgw. Dam. § 426; 7 Am. & Eng. Enc. Law, 691; 53 Wis. 345; 18 R. I. 791; 53 N. Y. Super.

Ct. 107. The evidence as to the character of the appellant's watchman was admissible. 1 Whart. Ev. §§ 48, 56; 71 Me. 349; 23 Pa. St. 424; 98. Mo. 338; 20 Mich. 121; Shear. & Redf. Neg. § 192; 38 Ind. 311; 46 Ia. 17; 78 Md. 253; 65 Fed. 953; 65 Fed. 941. Cf. 58 Ark. 389. This knowledge of the appellant of the character of the watchman tended to show malice or recklessness and increase the damages. 1 Suth. Dam. 71, 72, 716, 748, 751; 32 Mich. 77; Whart. Ev. § 48.

Hughes, J., (after stating the facts). There was much evidence introduced on the trial of this cause which it is unnecessary to state or discuss here. The plaintiff testified that on the evening of January 16th, 1895, he received a letter from his wife in Hot Springs, calling on him to come there at once. The letter was then offered in evidence, and read to the jury, over the defendant's objection, to which he excepted. That letter was as follows:

"Hot Springs, Ark., Jan. 16, 1895.
"Dear Husband:

Please come at once, as Mary is very sick, and I am in one respect very dangerous. Been sick for over a week, and you know what bad spells I have with my heart, and other troubles; so do come. The doctor says I am liable to die at any time. My cook is gone, and I am here all alone. I thought, in spite of all I could do last night, Mary would have convulsions. Now I need you; let work and everything go. If you never get work, come at once.     Your true loving wife until death.
                                                    "Etta Stroud."

May, alluded to in the letter, is shown in evidence to have been the plaintiff's adopted daughter. So much of this letter as was necessary or tended to show that the plaintiff's purpose in going to the depot on the night of the 16th was to take the train for Hot Springs was competent and relative evidence, but the reading of it in full to the jury was not necessary for that purpose, and it was calculated to excite the sympathies of the jurors, and prejudice them against the defendant, and was therefore erroneous.

S. W. Williams was permitted, over the objection of the defendant, to testify as follows·

Q. "How long have you known him (Pat Gallagher)?

A. "Over thirty years. I have known him ever since the war; before, I think.

Q. "Do you remember the suit of Thomas Hackett against the St. Louis Iron Mountain reported in 58 Arkansas?

A. "I do. I was one of the attorneys for plaintiff; I was senior counsel for plaintiff.

Q. "Was the defendant in this case, the Iron Mountain Railway Company, defendant in that case?

A. "Yes, sir, there is no other in the state of Arkansas.

Q. "What was that action brought for?

A. "That action was brought for the shooting of Hackett by this man Gallagher, while in the employ of the Iron Mountain Railway Company, near the foot of Rock street, at the freight depot of the said road.

Q. "Then that case was brought to recover damages for the conduct of Pat Gallagher?

A. "It was brought by plaintiff for personal injuries inflicted by Pat Gallagher as employee of the Iron Mountain Railway Company.

Q. "What was the result of the suit?

A. "We recovered for plaintiff for his injuries. The railway company appealed the case to the supreme court, where the judgment of the Pulaski circuit court was affirmed, and the defendant railway company paid the judgment to me as Hackett's attorney, but, in order to hold recourse upon Gallagher, the company had me, as attorney in fact for Hackett, assign the judgment to it, and the railway company satisfied it in the form of a purchase, instead of payment of the judgment. The judgment was against both the railway company and Gallagher.

Q. "Do you remember, Colonel, about when that shooting of Hackett took place?

A. "April 7, 1890."

S. N. Davis was allowed, over defendant's objection, to give testimony about the shooting of Hackett by Pat Gallagher, and questions were asked various other witnesses about the same, which they were allowed to answer over the objection of the defendant, to all of which it excepted and urged in its motion

for re-hearing, which was overruled by the court, to which defendant excepted.

The purpose of all this testimony was to show that Pat Gallagher was an incompetent, dangerous and malicious man, unfit for watchman, and that the defendant railway company knew this, and continued him, after it knew it, in its service as watchman. This evidence was incompetent, and it was prejudicial error to admit it. *Railway Co.* v. *Hackett*, 58 Ark. 389. If it were competent to introduce evidence to show that Pat Gallagher was a man of bad character, violent, dangerous, unfit and incompetent for the position of watchman, it was not competent to show it by proof of individual instances of bad conduct upon his part in that position. No evidence is allowed of particular acts of good or bad conduct, either to sustain or impeach character. The evidence must be confined to general reputation. 3 Rice, Evidence, § 376; *Jones* v. *State*, 76 Ala. 9; and *Hussey* v. *State*, 87 Ala. 121. "Every person is supposed to be capable at any time of sustaining his general reputation, but it would be unreasonable to expect any one to be prepared, without special notice, to answer an assault on his character imputed by particular acts of bad conduct." 3 Rice on Evidence, § 376. "Neither good nor bad character can be proved by specific acts or charges. *Smith* v. *State*, 47 Ala. 540; *McCarty* v. *People*, 51 Ill. 231; S. C. 99 Am. Dec. 542; *Gordon* v. *State*, 3 Ia. 410; *State* v. *Williams*, 77 Mo. 310.

In civil cases evidence of the general character is not admitted unless the nature of the action involves the general character of the party, or goes directly to affect it, Thus, evidence impeaching the previous general character of the wife or daughter in regard to chastity is admissible in an action by the husband or father for seduction, and this again may be rebutted by counter proof." 1 Greenleaf, Evidence, § 54, and cases cited.

There could be no doubt that when a witness is put on the stand to attack or defend character, he can only be asked, on the examination in chief, as to the general character of the person whose character is in question, and he will not be permitted to testify to particular facts, either favorable or unfavorable

to such person; but when the witness is subject to cross-examination, he may then be asked, with a view to test the value of his testimony, as to particular facts. 3 Rice on Evidence, § 375, p. 603 and § 376, and cases.

On the trial, at the instance of the plaintiff, the court gave to the jury instruction numbered 5, which is as follows:

"If the jury find for the plaintiff, then plaintiff is entitled to recover full compensation for the restraint imposed upon him, and the pain and anxiety of mind he suffered on account of said restraint; also for any insult or indignity inflicted upon his person, and the humiliation and shame caused by said injury, if any, and for the anxiety he suffered, if any, on account of being kept from his wife and child at Hot Springs."

The latter clause of this instruction is erroneous, in which the jury are told that they might award the plaintiff damages "for the anxiety he suffered, if any, on account of being kept from his wife and child at Hot Springs." The proof shows that the plaintiff was ejected from the depot at about 1:30 o'clock a. m., and that the south bound passenger train was due at the station at 2 o'clock a. m., and that he could have taken that train had he so desired; also, that another train south bound was due at that depot at 7 o'clock a. m. and still another at 1:45 p. m. and that the plaintiff took neither, nor made any effort to take either. Then it appears he was not delayed by being expelled from the depot. He voluntarily remained over at Little Rock several days after this expulsion by Gallagher. There was no evidence upon which to base that part of this intruction, and that part is erroneous and prejudicial. Besides, to say the least of it, if such damages were not too remote, the instruction is to broad and unlimited in this latter clause.

We will not discuss the testimony, as the case must be remanded. Life is too short to discuss the great number of instructions given and refused.

For the errors indicated the judgment is reversed, and the cause is remanded for a new trial.

ON REHEARING.

Opinion delivered January 13, 1900.

HUGHES, J.   We said in the original opinion in this cause that "so much of this letter (referring to the letter of Etta Stroud to her husband) as was necessary or tended to show that the plaintiff's purpose in going to the depot on the night of the 16th was to take the train for Hot Springs was competent and relative evidence, but the reading of it in full was not necessary for that purpose, and it was calculated to excite the sympathies of the jurors, and prejudice them against the defendant, and was therefore erroneous."

The reading of this letter was really unnecessary to show the defendant's purpose in going to the depot, for it was competent for him to testify as to this, and, having done so, he need not have read the letter to show it, unless it was made necessary to corroborate his testimony by denial of the defendant that he had received such a letter, when it would have been proper to read it only to show, by way of corroboration, his purpose in going to the depot. The counsel for the plaintiff below have called our attention to the point that there was only a general objection to the reading of the letter, and this we find on further examination is true. Therefore the counsel's contention that if any part of it was admissible all of it was is correct. If the defendant wished to exclude that part of it that was calculated to prejudice the jury against him, that is, that part of it relating to the sickness of the wife and daughter, he should have made a special objection to the reading of that part of the letter. It was not error for him to be allowed to read that part of the letter which showed that it contained a request for him to come to Hot Springs. This much tended to corroborate his testimony as to his purpose in going to the depot to take the train for Hot Springs on the night of the 16th. Having objected generally to the reading of the letter, the objection was properly overruled, and the letter was admissible to be read as evidence. Rice on Evidence no. 925 and 926; *Camden* v. *Doremus*, 3 How. (U. S.) 515.

As to the testimony of S. W. Williams and others, introduced over objection of defendant below, to show the character of Pat Gallagher, the watchman of the defendant, for violence and unfitness for his position, it was incompetent, for the reason that if he acted maliciously, violently and wrongfully, his principal, the railroad company, was liable, whether his character was good or bad,—as much liable as though the principal had been present, and had done the wrong, for, in contemplation of law, the principal was present in the person of the agent. In this case the question was, whether there was a specific wrong committed, and, if the proof showed there was, then, without regard to the character of Gallagher, the railroad company was liable, if at the time of the wrong, if any was done by Gallagher, he was acting within the scope of his employment. The case of *Dunham* v. *Rackliff*, 71 Maine, 345, was an action for damages alleged to have been caused by a collision between two teams in the night time. The court said in this case: "The plaintiff offered to show that the person by whom defendant's team was driven was represented to be a careless driver, but the evidence was excluded, and properly. The issue was as to the negligence of the defendant's servant at the time when and place where the injury occurred. It mattered not how negligent he may have been in the past, if at the time of the collision there was no negligence nor want of care. * * * The reputation of the servant for skill or want of skill was not admissible as relevant testimony to the issue tried." In an action by the servant against the master for the negligence of a fellow servant, the reputation of the fellow servant for negligence may be shown. "The law is well settled that the master is not liable in such case, unless guilty of negligence in the selection of the servant negligently causing the injury complained of, and this negligence of the master must be averred in the declaration and established by proof." *Ib.* p. 349; *Blake* v. *Maine Central R. R.*, 70 Maine, 63. Such is the character of cases cited by counsel on this point in the brief on motion for re-consideration, and on this point the cases cited in the original opinion, though correct, are not applicable in this case, and are calculated to mislead.

But the position of the court that in this case evidence as to the character of Gallagher, the watchman, was inadmissible is correct. The same ruling was made in the *Railway Co.* v. *Hackett*, 58 Ark. 389, where it was said "the testimony was clearly incompetent," which counsel seems to think is a typographical error, and that it should have been competent instead of incompetent.

We said in the opinion that the latter clause of the fifth instruction given for the plaintiff, in which the court told the jury that if they found for the plaintiff they might assess damages, if any, caused by the anxiety he suffered, if any, on account of being kept from his wife and child at Hot Springs, was erroneous, because there was no evidence on which to base it. There was evidence that, at the time Stroud was expelled from the depot by Gallagher, there was a train coming south within about two hundred yards from the depot, upon which Stroud might have gone, which the appellee's counsel suggests he did not take through fear of Gallagher, who had made demonstrations of violence toward him. The evidence is that Stroud was expelled at 1:30 a. m., that a train passed at 2 o'clock a. m., another at 7 a. m. next morning, and a third at 1:45 p. m. next day, and there is no evidence that plaintiff could not have taken either one of these three trains. There is no showing that Stroud had received any information, between the passing of the first train south and the passing of the three last-mentioned, that the condition of his wife and child had improved. He remained over at Little Rock, it appears, to prosecute Gallagher. It was not proper, therefore to instruct the jury that they might award Stroud damages on account of his anxiety by reason of being kept away from his wife and child at Hot Springs. The proof shows that he could have suffered no anxiety on that account, and there was no evidence to base the instruction upon. The instruction was abstract and misleading.

The opinion is modified as indicated, and the motion is denied.