**ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. HUDSON et ux.**
(No. 1261—5291.)

Commission of Appeals of Texas, Section A.
June 5, 1929.

See, also, 293 S. W. 811 and 295 S. W. 577.

E. B. Perkins, of Dallas, and Marsh & McIlwaine, Bryan Marsh, and H. B. Marsh, all of Tyler, for plaintiff in error.

Edwards & Hughes and Cone Johnson, all of Tyler, for defendants in error.

CRITZ, J. This suit was filed in the district court of Smith county, Tex., by W. H. Hudson and his wife, Rosa Hudson, defendants in error, who will, for convenience, be herein designated plaintiffs, against St. Louis Southwestern Railway Company of Texas, plaintiff in error, who will, for convenience, be designated defendant, to recover damages alleged to have been sustained by plaintiffs in virtue of their son, Clayton Hudson, having been shot and killed by one L. W. Pearce, a Texas ranger. The grounds upon which plaintiffs seek recovery are:

(a) That Pearce, at the time he killed Clayton Hudson, was in the employ of defendant; that such killing was wrongful; and that at the time Pearce was acting within the scope of his employment by defendant.

(b) That Pearce was a person unfit for the service that he was employed by defendant to perform; that defendant knew, or by the exercise of ordinary care could and should have known, that Pearce was an unfit person to perform such service; and that defendant was guilty of negligence in permitting said Pearce to remain in its service. In this connection it was alleged by plaintiffs that Pearce and other rangers were employed by defendant to protect its property and to prevent strikers from stationing and maintaining "pickets" around and near its shops, etc., and from interfering with its employees, and from dissuading persons from working for defendant. It is also alleged by the plaintiffs that Clayton Hudson was stationed in a public street in the city of Tyler, and acting within his rights as a "picket" at the time he was killed; that in killing the said Clayton

Hudson, Pearce acted wrongfully and negligently within the actual and apparent scope of his employment by defendant; and that Clayton Hudson's death was the direct and proximate result of the negligence of defendant and wrongful acts of Pearce.

The plaintiffs then specifically and particularly pleaded the unfitness of Pearce, and his bad character and reputation, and defendant's knowledge thereof, in the following language:

"The said L. W. Pearce was, at the time of said killing, and had been for a long time prior thereto, a violent, dangerous, overbearing and brutal man who regarded lightly the taking of human life, and was likely at any time to. shoot and kill or otherwise seriously injure the deceased or some other of said strikers unlawfully and wholly without justification, by reason of which disposition and characteristic he was wholly unsuited and unfit for the service in which he was employed by the defendant Company, as aforesaid, and wholly unfit for the said service in which the defendant caused and permitted him to be employed at and about its premises. Besides all this, the general reputation of the said L. W. Pearce, as being a violent, brutal and dangerous man, was and long had been exceedingly bad, at the time of said killing, throughout the City of Tyler and in the portion thereof where the defendant Company's said shopgrounds were located and its officers and agents operated as such, all of which qualities, characteristics, unfitness and general reputation of said L. W. Pearce the defendant company, its officers and agents well knew, and would have known by exercising ordinary care, at the time of and long before said killing, in ample time before it occurred to have avoided the killing of deceased by discharging said Pearce from the defendant Company's service and causing him to be discharged from the said employment in which he was engaged, which the defendant Company and its agents could and would have done by exercising ordinary or reasonable care before the time of said killing, but the defendant Company, its officers and agents negligently employed the said L. W. Pearce in the defendant's said service, and negligently caused and permitted him to be retained in said employment, and negligently caused and permitted him to be employed in said service, and negligently caused and permitted him to be stationed with a loaded gun upon and in the vicinity of the defendant's said shopgrounds at the time when and place where the said strikers were lawfully maintaining their pickets, including the deceased, during the said strike, and where the said Pearce as such armed guard was likely at any time to encounter the deceased or other picket of the strikers, and was likely at any time to wrongfully, unlawfully and negligently kill or seriously injure any of them, including the deceased, all of which the defendant, its officers and agents well knew, and would have known by exercising ordinary care, at the time of and long before said killing, in ample time to avoid or prevent the same by discharging said Pearce or causing him to be discharged from said service before the killing, which. the defendant, its officers and agents could and would have done by exercising ordinary care, which in all of said circumstances it was their duty to do. A direct and proximate cause of Eugene C. Hudson's death was the aforesaid unlawful, wrongful and negligent act of said L. W. Pearce, in the defendant Company's said service, in shooting the deceased as already stated. A direct and proximate cause of decedent's death was the negligence of the defendant Company in employing said Pearce and in causing or permitting him to be stationed upon or near its said premises, as an armed guard, when he was a violent and dangerous •man, wholly unfit for said service, and when his general reputation was that of a violent and dangerous man, and when the defendant, its officers and agents well knew his said qualities and his said general reputation, and would have known the same by exercising ordinary care, at the time of and before said killing."

The defendant answered by general demurrer, and specially excepted to that part of the petition setting up the bad character of Pearce and defendant's alleged knowledge thereof, etc.

The defendant further pleaded:

"(a) that at the time of the killing Pearce was a duly appointed and acting ranger in the service of the State of Texas, and that he, with a number of other rangers had been ordered by the governor of Texas to guard appellant's shop grounds to prevent certain of its former employees, including decedent, who were then out on a strike, from invading or trespassing upon appellant's said property, and from injuring and interfering with its employees; that the said rangers, including Pearce, were under the command and subject alone to the orders of H. P. Brady, a Texas Ranger, who was then acting as a captain of the force of rangers that had been stationed in appellant's shop grounds for the purpose of preventing the strikers from doing the things above set out; that appellant had no authority to control, or direct Pearce in the discharge of his duties as a ranger, and never at any time, ordered, directed or commanded him to prevent deceased and the other strikers from picketing its shop grounds, or interfering with them in any way; that Pearce was not acting as a servant, employee, or agent of the defendant, but was acting as a ranger in virtue of his appointment and qualification as such, and appellant was in no way responsible for him having shot and killed the son of appellees;

and (b) that in the event it should be held that Pearce was an employee of appellant, appellees ought not to recover against it because it never ordered, commanded or directed Pearce, or any of the other rangers to interfere with, molest or prevent plaintiff's son, and the other strikers from picketing its shop grounds; that the sole and only purpose of the rangers in guarding its shop grounds was to prevent the strikers from invading its property or trespassing thereon; that at the time Pearce shot and killed appellees' son decedent was not in the act of invading appellant's shop grounds and was not trespassing thereon and the act of Pearce in shooting and killing him was not done in the furtherance of appellant's business and was not within the scope of the authority of the said Pearce, real or apparent, as a guard of appellant's shop grounds, and that appellant was not responsible for Pearce's act in shooting and killing decedent."

The trial court overruled all general and special exceptions of the defendant, and the case was submitted to a jury on special issues. The questions submitted germane to this opinion are as follows:

"Question 1. Was L. W. Pearce an employee of the defendant company on the occasion and at the time Hudson was killed? In connection with Question 1, I instruct you that the term 'employé' as herein used means a person acting for or rendering service to another, for pay, by his or its authority, and under his or its direction or control; and if you find from a preponderance of the evidence that L. W. Pearce, prior to and until the killing of Hudson, engaged in guarding the property and employees of the defendant company to prevent persons from entering the company's premises without its consent, and to protect the company's employees from interference, and that such services, if any, of Pearce were for the benefit and interest of defendant and were performed under the direction of defendant's officials and agents for compensation paid by the company, then you will answer the first question 'yes,' although you may find from the evidence that at the time of rendering such service Pearce was a ranger; but unless you find as above stated you will answer said question 'no.'" Answer: "Yes."

"Question 2. Was L. W. Pearce, on the occasion and at the time he killed Clayton Hudson, acting within the scope of his employment, if any, by the defendant company? In connection with Question 2, I instruct you as follows: If you find from a preponderance of the evidence that on the occasion and at the time of the killing Pearce was employed by the defendant company to guard its shop grounds from intrusion and protect its employees from interference, and that he was, performing this service at that time, and that in killing Hudson he did not act from or out of said service, if any, or perpetrate a mere personal design of his own, but was furthering and promoting the interests of said defendant in the course of said employment, if any, and that the killing occurred in the course of his said service, if any, to the defendant company, and that the altercation which accompanied or resulted in the killing arose out of the performance by Pearce of his said service, if any, to the defendant company, and that the killing occurred in the course of an uninterrupted continuation of such altercation, then you will answer said Question 2 'yes;' but unless you find as above stated then you will answer said question 'no,'" Answer: "Yes."

"Question 3. Was the killing of Clayton Hudson by L. W. Pearce a wrongful act?" Answer: "Yes."

"Question 4. Was L. W. Pearce a person unfit for the service, if any, he was employed, if he was, by the defendant to perform?" Answer: "Yes."

"Question 5. Would the defendant company, its officers and agents, by exercising ordinary care, have ascertained before the killing of Hudson that Pearce was an unfit person (if you find he was) for the service, if any, in which he was employed, if he was, by the defendant company at the time of the killing?" Answer: "Yes."

"Question 6. Was such unfitness, if any you find in answering Question 4, of L. W. Pearce a proximate cause of the death of Clayton Hudson?" Answer: "Yes."

"Question 7. Was the defendant company, its agents and servants, guilty of negligence in permitting L. W. Pearce to be and remain in its service (if he was) till the time of the killing?" Answer: "Yes."

"Question 8. Was such negligence of defendant (if any you find in answering Question 7) a proximate cause of the death of Clayton Hudson?" Answer: "Yes."

On the verdict of the jury the trial court finally rendered judgment for the plaintiff W. H. Hudson for $1,000, and for the plaintiff Mrs. Rosa Hudson for $15,000. The case was duly appealed to the Court of Civil Appeals for the Sixth District at Texarkana, which court affirmed the judgment of the trial court. 9 S.W.(2d) 511. The case is now before the Supreme Court on writ of error granted on application of defendant railway company.

The defendant railway company duly and seasonably excepted to the instructions in the trial court's main charge in connection with special issues 1 and 2, on the ground that they are general charges, and further that they are erroneous in several particulars not necessary to specify here.

The Court of Civil Appeals holds the above charges are general charges, and the trial court committed error in giving them, but that such error was harmless, because (a) it conclusively appears from the evidence that

Pearce was defendant's employee, and acted within the scope of his employment, when he killed Hudson; and because (b) defendant is estopped from complaining of the error for the reason that it requested the trial court to give certain special instructions touching on similar matters, subject to objection on the same ground that it urges against the charges that it complains of, and in that way invited the error of which it complains.

The charges in question are certainly general charges, and are not such as are permitted under the article 2189, Rev. Civ. St. 1925. Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Humble Oil Co. v. McLean (Tex. Com. App.) 280 S. W. 557.

These charges must therefore result in a reversal, unless it is shown as a matter of law that Pearce was defendant's employee, and acted within the scope of his employment when he killed Hudson, or that the error was invited or waived.

Addressing ourselves to the first of these propositions, we call attention to the fact that this is the second time this case has reached the Supreme Court. 293 S. W. 811; 295 S. W. 577. The case on the first appeal was referred to Section B of the Commission, and the opinions were written by Judge Speer. In the opinion in 293 S. W. 811 (see body of opinion 814) is found the following holding: "It (referring to the opinion of the Court of Civil Appeals [286 S. W. 766]) has set aside the findings upon the special issues as to whether Pearce was an employee of the defendant company, and whether, at the time, he was acting within the scope of his employment. Upon these issues there was evidence both ways. It would not be proper for us to discuss further than necessary what this testimony was, but there is an abundance of evidence in the record which would justify a jury or court in finding both of these issues, as the jury did find them, but, as there was some evidence to the contrary, it was within the province of the Court of Civil Appeals to set aside the findings, and we have no authority to revise that action, but, having done so, it was its duty to remand the cause for another trial."

We think that the evidence in the present appeal, as a matter of law, is in the same condition in this respect it was in the appeal disposed of by the opinion of Judge Speer. There is abundant evidence to support the finding of the jury to the effect that Pearce was an employee of the defendant at the time of the killing, and that he was acting within the scope of his employment at such time; but upon these issues there is some evidence both ways, and, such being the case, the trial court could not have directed a verdict either way on either of these issues.

■ We now come to consider the question as to whether the errors in giving the general charges complained of were invited by the defendant having requested charges also general in their nature. We hold that a party is not estopped to complain of an error in a court's charge that is calculated to injure him, by the rule of invited error, unless it appears from the record that the court was led or induced by him to commit the error. Ft. Worth & D. C. Ry. Co. v. Amason (Tex. Civ. App.) 239 S. W. 359; Shipley v. M. K. & T. Ry. Co., 110 Tex. 194, 217 S. W. 137; M. K. & T. Ry. Co. v. Eyer, 96 Tex. 72, 70 S. W. 529; Western Union Tel. Co. v. Bowen, 97 Tex. 621, 81 S. W. 27; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S. W. 1060; Atchison, T. & S. F. Ry. Co. v. Pickens (Tex. Civ. App.) 118 S. W. 1133; Southern Pac. Ry. Co. v. Green, 280 S. W. 198. (Com. App. opinion approved.)

■■ In the case at bar the record shows that the defendant duly and seasonably excepted to the charges given in the main charge on the ground that they were general charges, and the record also shows that the defendant requested the trial court to give the special charges referred to by the Court of Civil Appeals, which special charges are as follows:

"Gentlemen of the Jury: You are instructed in connection with Question No. 1 submitted to you by the Court, that at the time Pearce killed Hudson that he was a Texas Ranger, and if you believe from the evidence he was at that time under the control and subject to the orders of H. P. Brady and that the defendant had no control over him, then you will answer 'No' to said question, and this though you may believe from the evidence that he was being paid by the defendant."

(4) "Gentlemen of the Jury: You are instructed in connection with Question No. 1 that at the time Pearce killed Hudson he was a ranger, and although he was paid by the defendant and his acts were for the benefit and interest of defendant, you will answer the said question 'No' unless you further find from the evidence that his acts were performed under the direction of defendant's officials or agents."

(5) "Gentlemen of the Jury: You are charged in connection with Question No. 1 that the evidence in this case shows that Pearce was a ranger at and prior to the time he killed Hudson and the mere fact that defendant paid him for his services as such would not render him an agent or employee of defendant, and if you believe from the evidence that Pearce was subject alone to the orders or directions of Captain Brady and that defendant company had no authority to direct or control him in the discharge of his duties, you will answer said question 'No.'"

(6) "Gentlemen of the Jury: You are instructed in connection with Question No. 1

submitted to you by the court, that if the Governor became convinced that the movement of commerce by the St. Louis Southwestern Railway Company of Texas was being interfered with in Tyler then he had the right to send rangers to Tyler, and if you further believe from the evidence that at the time Pearce killed Hudson he was under the control and direction of Captain Brady, and that the defendant had no control over the said Pearce, then it will be your duty to answer 'No' to said question."

(7) "Gentlemen of the Jury: You are instructed in connection with Question No. 2 submitted to you by the Court, that if you believe from the evidence that at the time Pearce shot Hudson that the said Hudson was in a public street, and was making no effort to trespass on the property of defendant, and was not interfering or attempting to interfere with any of defendant's employees, and was sitting in a peaceable and quiet manner off the property of defendant, then it will be your duty to answer said question 'No.' "

(8) "Gentlemen of the Jury: You are instructed in connection with Question No. 2 submitted to you by the Court, that if you believe from the evidence that at the time Pearce shot Hudson that the said Hudson was in a public street, and was making no effort to trespass on the property of defendant, and was not interfering or attempting to interfere with any of defendant's employees, and was sitting in a peaceable and quiet manner off the property of defendant, then it will be your duty to answer said question 'No.' "

The record also shows that all of these special requested charges are indorsed, "Refused, J. R. Warren, Judge Presiding."

Articles 2184, 2185, and 2186, Rev. Civ. St. of Texas 1925, read as follows:

"Art. 2184. Unless expressly waived by the parties, the judge shall prepare and in open court deliver a written charge to the jury on the law of the case, or if the case is submitted on special issues, he shall submit the issues of fact to the jury."

"Art. 2185. The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. Failure of the court to give reasonable time to the parties or their attorneys for examination of the charge shall be reviewable upon appeal upon proper exception. The judge shall so frame his charge as to distinctly separate questions of law from questions of fact, and not therein comment on the weight of the evidence, and so as to instruct the jury as to the law arising on the facts, and shall only submit controverted questions of fact."

"Art. 2186. Either party may present to the judge such written instructions as he desires to be given to the jury; and the judge may give such instructions, or a part thereof, or he may refuse to give them, as he may see proper. Such instructions shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination."

In passing on the very question here involved, Judge Harvey of this section of the commission, in Southern Pacific Co. v. Green (opinion approved), uses the following language:

"It will be noted that the statutes require the judge to prepare his charge and submit it to the respective parties or their attorneys for inspection, before special charges requested by either party are prepared and presented to the court. Provision is also made for the allowance of a reasonable time for the presenting of objections to the judge's charge, and the preparation and presenting of special charges, after the judge's charge is submitted to counsel for inspection and examination. These statutory requirements became law for the first time in the year 1913.

"Prior to that time our courts indulged the presumption that an error in the judge's main charge was invited when the record disclosed that the complaining party had, by requested special charge, requested the court to submit to the jury such erroneous matter. Railway v. Sein, 33 S. W. 215, 558, 89 Tex. 63. But, in view of statutory provisions now existing, such a presumption cannot be now properly indulged. The order of procedure provided by the statutes must be presumed to have been followed, unless the record in the particular case show otherwise. It will be presumed, unless the contrary be disclosed by the record, that the judge prepared his charge as it appears in the record, and that he submitted it to counsel for their inspection and objections, before any special charges were prepared and presented to the judge. In such a case there can be no basis for a conclusion that the error was invited by the complaining party.

"It does not necessarily follow, however, that because a party did not invite the error in the judge's charge of which he complains he may not waive any objection which he may have made thereto, by requesting a special charge presenting the matter of which he complains, in substantially the same form, as same appears in the judge's charge, which action, of course, would be anomalous and would rarely occur in actual practice.

"In order, however, for a requested special

charge to operate as a waiver of an objection which the party requesting same has made to the judge's charge, such special charge, as a whole, must be the same, in substance and effect, as that part of the judge's charge of which such party complains. Any other rule would, in many cases, operate to deprive the complaining party of the right to present his view of the law upon other issues in the case, unless he waived his objection by including the erroneous matter in his requested special charge. Railway Co. v. Eyer, 70 S. W. 529, 531, 96 Tex. 72, 77."

Under the above rule it will be presumed, the record showing nothing to the contrary, that the statutes were followed; that the judge prepared his charge as it appears in the record; that he submitted it to counsel for their inspection and objections before any of said special charges were prepared and presented to the judge; and that defendant's exceptions to the main charge were overruled before said special charges were presented. Therefore, under such a state of the record, there can be no reason for a conclusion that the error above complained of was invited by the defendant. Furthermore, the error is not even waived, because the special charges show on their face not to be a presentation of the matter complained of in the same form. In fact, the special charges show an effort on the part of the defendant to get the court to instruct the jury on its defensive theories, in general form, but according to legal presumptions after its objections to the main charge had been overruled, and after they were legally on notice that the main charge in the form set out in the record would be given. Furthermore, the special charges are not the same in substance or effect as the charges given.

The Court of Civil Appeals holds: "So, it seems, by the test applied in the Harrington case the refused special charges, like the instructions appellant complains of, were subject to objection on the ground that they were 'general' and that appellant therefore is in a position where it has no right on the ground specified to complain of the instructions given by the court."

It seems from the above statement that the Court of Civil Appeals holds that the mere fact that one party may present a special charge that is general in its nature will, in law, invite the court to give any general charges, and waive any error in doing so. We cannot agree to such holding for the reason that: (a) It is presumed, in the absence of a showing in the record to the contrary, that such charges were presented after the defendant's objections to the main charge were overruled; and (b) because the special charges do not present the same matters complained of in the general charge, either in substance or effect, but, as above shown, are efforts on the part of the defendant to have the court present its defensive theories in general form after it has failed in its effort to prevent the court from presenting the plaintiff's offensive theories in that form. We hold that a record in this condition shows no invited error, as it could not have misled the court. Further, no waiver is presented because the special charges do not present in substance or effect the same matters presented in the main charge.

■ The Court of Civil Appeals seems to place the test with reference to the question of invited error on a construction of the word *form* as used in the several decisions. We hold that the mere fact that a charge general in *form* is requested after an objection to a part of the main charge on the ground that it is a general charge is overruled cannot possibly invite the error already committed. The whole doctrine of invited error is grounded on the rule that: "Where a party by a request for a ruling leads the court into error, he should be precluded from claiming a reversal of the judgment by reason of the error so committed. To hold otherwise would be to permit him to take advantage of his own wrong. Where the court upon the trial is requested to affirm a proposition of law in the charge, and it is so affirmed, the rule applies." M. K. & T. Ry. Co. of Texas v. Eyer, 96 Tex. 72, 70 S. W. 529. No such record is shown here. Further, the term *same form* as used in the decisions on waiver and applied to this record means the same in *substance and effect.* Southern Pac. Ry. Co. v. Green, supra.

■ We come now to consider the assignments relating to the action of the trial court in overruling defendant's exceptions to plaintiff's pleadings in regard to the kind and character of man Pearce was, and defendant's negligence in employing him. Also, in this connection we consider the errors assigned by defendant touching the admission of evidence on this issue, and the submission thereof to the jury.

The Court of Civil Appeals holds, in effect, the pleadings, evidence, and issues submitted with respect to Pearce's unfitness, etc., were authorized by House Bill 240, c. 109, p. 212, of the General Laws of the Regular Session of the 37th Legislature of Texas, 1921, in force at the time this killing occurred. The part of said act applicable to this case reads as follows: "When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskilfulness, or default of the proprietor, owner, charterer or hirer of any industrial or public utility plant, or any railroad, street railway, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, wrongful act, neglect, carelessness, unskilfulness, or default of his, their, or its servants or agents, such proprietor, owner, charterer, or hirer shall be liable in damages for the injuries causing such death." Section 1.

We are unable to see where Pearce's char-

acter or the negligence of defendant in employing him has any application to this case. Under the provisions of the above statute, "When an injury causing the death of any person is caused by the wrongful act, * * * of * * * any railroad, * * * or by the * * * wrongful act * * * of * * * its servants, * * * such * * * hirer shall be liable in damages for the injuries causing such death." The fact that Pearce was a desperate and brutal man, and a man likely to kill and injure, and the further fact that the defendant was guilty of negligence in employing such a man for the duties assigned to him, cannot be a ground of recovery in the case at bar unless the railroad can defend itself on the converse of this proposition. Under the statute quoted, if Pearce were an employee of the defendant company on the occasion, and at the time he killed Hudson, and was, at such time, acting within the scope of his employment, and such killing was a wrongful act, the defendant would be liable, and that regardless of the fitness or unfitness of Pearce, and regardless of the negligence or care of the defendant in selecting him. In other words, under the issues as made by the case at bar, if Pearce was the worst character on earth, and the defendant was negligent in employing him, but he killed Clayton Hudson at a time when he was not acting within the scope of his employment, or under circumstances that the killing was justifiable in law, and not a wrongful act, the defendant would not be liable. On the other hand, if Pearce was the best man on earth, and the defendant was careful and prudent in selecting him, but he killed Clayton Hudson while acting within the scope of his employment, and the killing was a wrongful act, the defendant would be liable. Minot v. Snavely (C. C. A. 8th Circuit) 172 F. 212, 19 Ann. Cas. 996; St. L., I. M. & S. R. R. Co. v. Stroud, 67 Ark. 112, 56. S. W. 870; Oakland City Agricultural & Industrial Society v. Bingham, 4 Ind. App. 545, 31 N. E. 383; L. & N. Ry. Co. v. Cottengin (Ky.) 104 S. W. 280, 13 L. R. A. (N. S.) 624; Fonda v. St. Paul City R. R. Co., 71 Minn. 438, 74 N. W. 166, 70 Am. St. Rep. 341.

In Minot v. Snavely, supra, it is shown that suit was filed by a wife to recover damages for the negligent killing of her husband while passing from a passenger elevator, and one of the grounds of negligence alleged was that the servant in charge of the elevator was unfit by reason of his youth and inexperience to handle the elevator, and that the defendant well knew or by the exercise of ordinary care might have known such fact. The court in passing on this matter said:

"At common law a master is not liable for injuries personally suffered by his servant through the ordinary risks of the business, including the negligence of a fellow servant, acting as such, while engaged in the same common employment, unless the master is chargeable with negligence in the selection of the servant in fault, or in retaining him after actual or constructive notice of his incompetency. The exception above mentioned to the nonliability of the master to his servant for the negligent acts of a fellow servant never had any existence as a substantive ground of liability except in favor of the servant. It is a part of the fellow-servant rule, and is inapplicable to any actions, except those brought by the servant against the master for injuries received by reason of the negligence of a fellow servant.

"The master is liable to third persons for the damage caused by the wrongful or negligent acts of his servants in the course of his employment as such, and he is liable irrespective of the care used in the selection of that servant or of notice of his incompetency. It necessarily follows that the specification of negligence numbered 2, above mentioned, had no place in the petition, the evidence, or the charge of the court. Notwithstanding, however, evidence was admitted tending to show general incompetency of the person in charge of the elevator, and the jury were told by the court in its charge that it was the duty of defendants to employ a reasonably safe, prudent person, in the handling of the elevator. The liability of the defendants in the case at bar depended wholly upon the fact as to whether the person operating the elevator was guilty of negligence at the time Snavely was passing from the elevator, which was the proximate cause of his death, except, of course, as this liability might be affected by the contributory negligence of Snavely himself. As the defendants could not relieve themselves from liability for the negligence of the operator of the elevator by showing that they exercised proper care in his selection or had no notice actual or constructive of his incompetency, so it was incompetent for plaintiff to attempt to fix a liability upon the defendant by showing want of care in the selection of the operator of the elevator or actual or constructive notice of his general incompetency. We are of the opinion that the admission of the testimony herein quoted taken in connection with the charge of the court in relation thereto was necessarily very prejudicial to the defendants. We are unable to say upon which specification of negligence the jury found for the plaintiff, but, if their verdict was based upon the negligence of the operator at the time of the accident, the evidence of his general incompetency may have determined the case against the defendant.

In St. L., I. M. & S. R. R. Co. v. Stroud, supra, it is shown that suit was brought against the railroad company for damages resulting from the watchman of the company having driven the plaintiff from its depot. The court, in passing on the right to introduce evidence on the bad character of the watchman, among other things, says: "As to the testimony of S. W. Williams and others,

introduced, over objection of defendant below, to show the character of Pat Gallagher, the watchman of the defendant, for violence, and unfitness for his position, it was incompetent, 'for the reason that if he acted maliciously, violently, and wrongfully, his principal, the railroad company, was liable, whether his character was good or bad, as much liable as though the principal had been present and had done the wrong; for, in contemplation of law, the principal was present, in the person of the agent. In this case the question was whether there was a specific wrong committed, and, if the proof showed there was, then, without regard to the character of Gallagher, the railroad company was liable if at the time the wrong, if any, was done by Gallagher, he was acting within the scope of his employment."

In L. & N. Ry. Co. v. Cottengin, supra, it is shown that the action is based on damages resulting from the plaintiff having been assaulted by one of defendant's conductors, and the court, in passing on the very' question here under discussion, says: "Appellee was allowed to ask the conductor, when the latter was testifying as a witness, whether he had not heretofore knocked passengers down, and his company had been sued for the act, and if it had not occurred frequently. As evidence to show that the conductor in the instant case has assaulted appellee, it was not relevant. We have the rule in this state that a common-carrier corporation is liable for the wanton and malicious act of its servants, done in the course of their employment, whether or not the master knew of the character of the servant. Other jurisdictions have sometimes held that the master is not liable unless it knew of the servant's 'character or reputation, and continued him in its service notwithstanding such knowledge. In such jurisdictions the evidence under discussion would have been relevant as tending to show the master's knowledge of the servant's character. But with us the knowledge of the master is not necessary to make it answer for the servant's conduct, when acting as such servant. Therefore the evidence was not receivable for that purpose. In no event was it material or pertinent to the case in hand.'-

The plaintiffs insist , that the Supreme Court has already foreclosed and settled the issue here involved in accord with the holding of the Court of Civil Appeals herein, in the case of Chicago, R. I. & G. Ry. Co. v. Carter (Tex. Com. App.) 261 S. W. 135. An examination of the Carter Case will show that the assignment or question of law raised by the railroad company was: "When no special relationship exists between the company and the person killed, a railroad company owning and operating a railroad is not liable for the wilful and intentional killing of a person by the railway company's servant."

The opinion in the Carter Case seems to hold that the railroad company would be liable under article 4694, Rev. Civ. St. 1911. Said statute reads as follows:

"Article 4694. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer, of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents; and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery, or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company. '

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another."

A reading of the 1921 Act will show that it expressly amends article 4694, of the 1911 Statutes. It was contended by the railroad company in the Carter Case that under article 4694, supra, they were not liable for the willful and intentional act of its employee.

In passing on the above contention in the Carter Case, Judge Chapman, speaking for the commission, held that the company was liable for negligence in selecting its agent under article 4694, Rev. Civ. St. of Texas 1911, then in force. In other words, Judge Chapman held in effect that in a case where the railroad company was not liable for the willful and intentional act of the servant, they were liable for negligence in selecting the servant, if such 'negligence is a proximate cause of the killing. We agree with this holding if said article 4694 be given a construction that it does not make the railroad company liable for the willful and intentional act of the servant. An examination of article 4694, supra, will disclose that it covers negligence and carelessness of the proprietor, etc., and the unfitness, negligence, or carelessness of the servant. The 1921 act very significantly adds wrongful act as applied to both the employer and the servant. We hold that the term 'wrongful act contained in the 1921 law covers and expressly includes the willful and intentional act of the servant. The Supreme Court did not expressly approve the opinion in the Carter Case, but merely approved the judgment recommended. The correct judgment was undoubtedly entered, for the reason that if the railroad company was not liable for the willful and intentional act of the servant, then it was liable in that case for negligence in his selection. We think

the same would be true in the case at bar if the railroad company was not liable for the willful and intentional act of Pearce, but we hold that under the 1921 act the company is liable for Pearce's willful and intentional act, as well as his negligence, etc., if done in the scope of his employment. It follows that the Court of Civil Appeals erred in not sustaining defendant's assignments relating to those issues.

We recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.