**TRADERS & GENERAL INS. CO. v. PAR-
KER et ux.**

**No. 10150.**

Court of Civil Appeals of Texas. Galveston.
Dec. 21, 1935.

Rehearing Denied Jan. 30, 1936.

Collins & Fairchild, of Lufkin, and Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, for appellant.

Mayfield & Grisham, of Tyler, J. D. Pickett, of Palestine, and William J. Park, of Tyler, for appellees.

LANE, Justice.

Daniels Drilling Corporation was, on the 26th day of December, 1932, and for about two months prior thereto, a subscriber, as that term is used in the Workmen's Compensation Law of the state of Texas (Vernon's Ann.Civ.St. art. 8306 et seq.). Said corporation as such subscriber on said dates held a policy issued to it by the Traders & General Insurance Company, hereinafter for convenience referred to as the insurance company. The policy was such as was usually, under the provisions of law, issued to subscribers.

One Rufus Parker, on or about the 26th day of December, 1932, while in the discharge of his duties as an employee of Daniels Drilling Corporation, or of one W. L. Barclay, suffered an injury from which he died. Frank Parker and his wife, Clara Parker, were respectively the father and mother of the deceased, Rufus Parker.

In due time and manner, as provided by the Workmen's Compensation Act, Frank

Parker and Clara Parker gave notices of the injury suffered by Rufus Parker, and in due time they filed their claims for compensation with the Industrial Accident Board of the state of Texas, and on the 7th day of April, 1933, the board rendered its final ruling and decree upon the claim. In such decree it is recited and decreed as follows:

"On December 26, 1932, Daniels Drilling Corporation, a subscriber to employers' Liability Law with insurance carried by Traders and General Insurance Company, had in its employ Rufus Parker who suffered injuries in the course of his employment resulting in his death, and whose average weekly wage was $28.85, and compensation rate $17.31 per week under the act.

"Deceased left surviving as his exclusive beneficiaries Frank Parker, father, and Clara E. Parker, mother, who are entitled to $17.31 per week for 360 weeks. On April 10, 1933, fifteen installment payments in the sum of $259.65 will have matured, leaving an unaccrued period of 345 weeks. It appearing that said beneficiaries are in need of $1,204.33 and that an emergency exists therefor, the Traders and General Insurance Company is directed to advance said sum from the extreme latter end of the remaining compensation period, and in consideration of said advancement cancel the last 98 payments due said beneficiaries; the present cash value of said 98 payments when discounted at 6 % per annum being the amount of this advancement, and leaving an outstanding period of 247 weeks.

"Traders and General Insurance Company is ordered to pay Frank Parker $731.99 for accrued and advanced payments of compensation, and the further sum of $8.65 per week for remaining period of 247 consecutive weeks from April 10, 1933.

"Traders and General Insurance Company is ordered to pay Clara E. Parker $731.99 for accrued and advanced payments of compensation, and the further sum of $8.66 per week for remaining period of 247 consecutive weeks from April. 10, 1933.

"An attorneys' fee of 15% on the first $1,000 and 10% on .amounts in excess of said first $1,000 paid on this award, is ordered paid out of installment payments by Traders and General Insurance Company to Mayfield and Grisham of Tyler, Texas, attorneys for said beneficiaries. Previous payments of compensation, if any, and attorneys' fee shall be deducted from compensation herein awarded.

"When this award has been fully paid, the Traders and General Insurance Company will stand financially discharged from all liability on account of these claims for compensation."

In time and manner as provided by law, the insurance company gave notice to the Industrial Accident Board that it would not abide by the award made and that it would within twenty days file suit in a court of competent jurisdiction to have said award set aside.

In due time the insurance company brought this suit in Anderson county, Tex., against Frank Parker and Clara Parker.

The plaintiff alleged that the final ruling and decree of the Industrial Accident Board was unsupported by the facts or law, and therefore should be set aside. It especially denied that the death of Rufus Parker resulted from injury sustained by him while in the course of his employment by Daniels Drilling Corporation. Plaintiff attached a copy of the decree of the Industrial Accident Board to its petition and made it a part thereof. Plaintiff's prayer was that judgment be rendered setting aside the final ruling and decree of the Industrial Accident Board and that defendants take nothing from plaintiff.

Defendants Frank Parker and his wife, Clara Parker, answered by general demurrer, general denial, and becoming cross-plaintiffs, seeking affirmative relief, alleged the injury and death of their son, Rufus Parker, on the 26th day of December, 1932, and that at the time of his injury and death he was an employee of Daniels Drilling Corporation. They alleged such facts relative to said injury as would give the Industrial Accident Board and the court jurisdiction to pass upon the issues involved between the parties. They alleged that at the time and prior to the injuries suffered by their son he was earning $5 per day, and that if it be held that they are not entitled to a recovery under first subsections 1 and 2 of section 1, art. 8309, Workmen's Compensation Act, they are entitled to have the average weekly wage of their said son estimated and calculated, as provided by first subsection 3 of said act, which would be the sum of $17.31 per week, same being 60 per cent. of the average weekly wages of their son. They allege facts,

which, if found to be true, would entitle them to a lump sum in commutation of plaintiff's liability. They further alleged that plaintiff refused to pay them any compensation whatever, to their damage in the sum of $6,231.60 as weekly compensation due under the provisions of the law, together with 6 per cent. interest on all past-due payments from their respective due dates until paid. They pray for judgment against the insurance company for the sum of $6,231.60, together with interest on all past-due weekly installments.

By supplemental petition plaintiff demurs generally to the allegations of cross-plaintiffs' answer and petition, and also makes general denial of all of such allegations.

At the close of the evidence the plaintiff insurance company presented its motion for an instructed verdict in its favor, which motion was by the court refused.

The cause was tried before a jury upon special issues submitted by the court, in answer to which they found: (1) That a preponderance of the evidence shows that Rufus Parker, deceased, was an employee of Daniels Drilling Corporation at the time he received the injury that caused his death, as the term "employee" is defined in the charge of the court; (2) that Rufus Parker, deceased, was not an employee of W. L. Barclay only at the time he received his injury from which he died; (3) that $3.50 would be just and fair to both parties as the daily wages for the kind of work that Rufus Parker was doing at the date he received his injury which caused his death.

The undisputed evidence shows that the employees of Daniels Drilling Corporation worked seven days in each week, and, as already stated, the jury, in answer to special issue No. 3, found that $3.50 would be just and fair to both parties as the daily wages for the kind of work that Rufus Parker, deceased, was doing at the time he received his injury from which he died. Upon such evidence and finding of the jury, the court calculated that the weekly wages of the deceased, Rufus Parker, was $24.50 and that 60 per cent. of such sum, as allowed by law in cases such as the present one, was $14.70. The court, using the figures stated as a basis in connection with the answers of the jury to the other special issues submitted and the evidence, rendered judgment for cross-plaintiffs, Parker and wife, as follows:

"And it further appearing to the court that forty-nine weekly installments, of Fourteen and 70/100 Dollars each, had matured on the date of trial herein and that each of said installments should bear interest at the rate of six percent per annum from the date the same matured until the date of trial, and that the amount of said installments, including principal and interest, on the date of trial is the sum of Seven Hundred Thirty Eight and 21/100 ($738.21) Dollars; and it further appearing to the court that on the date of judgment there were three hundred eleven (311) weekly payments of Fourteen and 70/100 Dollars, each, which had not then matured, and that defendants are entitled, to judgment for such number of weekly payments, the first of such payments maturing on December 16th, A. D. 1933, and a like payment maturing at the end of each consecutive week thereafter until the whole number of said payments are matured, together with six percent interest on each of said weekly payments from the time each matures until the same is paid.

"It is, therefore, considered, ordered, adjudged and decreed by the court that plaintiff, Traders & General Insurance Company, take nothing by its suit, and that the relief prayed for in all of its petitions be in all things wholly refused and denied.

"It is further considered, ordered, adjudged and decreed by the court that the defendants, Frank Parker and Clara E. Parker, do have and recover of and from the plaintiff, Traders & General Insurance Company, Seven Hundred Thirty Eight and 21/100 ($738.21) Dollars, in a lump sum, in satisfaction of the Forty-nine weekly installments of Fourteen and 70/100 Dollars that had accrued on the 9th day of December, A. D. 1933, and at the time the verdict was returned in this cause, together with interest thereon at the rate of six percent per annum from said last mentioned date until the same is paid and for which execution is here now ordered to issue.

"It is further considered, ordered, adjudged and decreed by the court that the defendants, Frank Parker and Clara E. Parker, do have and recover of and from the plaintiff, Traders & General Insurance Company, the sum of Fourteen and 70/100 Dollars per week, payable weekly, for the definite and fixed period of Three Hun-

dred Eleven weeks, the first installment thereof to become due and payable on the 16th day of December, A. D. 1933, and a like installment for said defendants shall thereafter become due and payable at the end of each succeeding week, consecutively, until three hundred eleven of such installments have been paid; that each of said installments shall bear interest from the date of maturity until paid at the rate of six percent per annum, and execution is here now ordered to be issued from time to time for the collection of each weekly installment and interest thereon as the same accrues in the future.

"It is further ordered and decreed by the court that the judgment herein rendered to defendants is a joint judgment, and that each of said defendants shall receive an equal undivided one-half of the sum of the accrued weekly installments and interest thereon for which judgment is herein given in a lump sum, and each of said defendants is entitled to receive an equal undivided one-half of the Three Hundred Eleven weekly installments and interest thereon as they accrue after December 9th, A. D. 1933."

From such judgment, the insurance company has appealed.

Appellant's first contention for reversal of the judgment is that the answer of the jury to special issue No. 1, to the effect that Rufus Parker, deceased, at the time of his injury which caused his death, was an employee of the Daniels Drilling Corporation, is contrary to the great weight and preponderance. of the evidence, was manifestly wrong, and rendered from prejudice or passion on the part of the jury; wherefore; the trial court should have set the same aside as requested in appellant's motion for a new trial.

We overrule such contention. There was abundant evidence to support the answer of the jury to special issue No. 1. Indeed, we are of opinion that the great weight and preponderance of the evidence supports the finding of the jury that at the time of said injury Rufus Parker was an employee of Daniels Drilling Corporation.

By appellant's second assignment it is insisted that the trial court erred, under the evidence, in failing to instruct the jury that the burden of proof was upon the cross-plaintiffs, who claimed compensation, to establish by a preponderance of the evidence that Rufus Parker, deceased, was not an employee of one W. L. Barclay only at the time he suffered his injury.

Such contention is overruled for two reasons:

(1) The plaintiff in no manner alleged, as a defense, that Rufus Parker was at the time of his injury an employee of W. L. Barclay, Barclay's name is not mentioned in the plaintiff's pleas. The only defense pleaded by the plaintiff to defeat a recovery by cross-plaintiffs for the death of their son, Rufus, was a denial that such death resulted from an injury sustained by Rufus while in the course of his employment by the Daniels Drilling Corporation.

(2) Plaintiff filed its objections to the charge of the court, and in such objections no mention was made of the failure of the court to instruct the jury that the burden of proof was upon cross-plaintiffs. Wherefore, such objections not being made and presented ·as provided by article 1971, Vernon's Sayles' Civil Statutes 1914, must' be considered as waived. That part of article 1971, above mentioned, applicable to the question here discussed, is as follows: "The charge shall be in writing and signed by the judge; after the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable' time given them in which to examine it and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury,· and all objections not so made and presented shall be considered as waived."

Article 2185, Revised Civil Statutes of 1925, contains substantially the provisions which we have quoted, found in article 1971.

To grant a reversal in the present case because of the failure of the court to charge specifically on the burden of proof, as requested by appellant, no objection having been made in proper time to the charge because of such failure, so as to give the trial court an opportunity to correct such failure, would be to invite unnecessary appeals and turn trials into contests of sophistry. Nothing should be done to change the fact that lawyers are officers of court obligated to assist the judge in trying the case correctly. Northern Texas Traction Co. v. Wright (Tex. Civ.App.) 62 S.W.(2d) 624; Fort Worth

& D. C. Ry. Co. v. Thompson (Tex.Civ. App.) 222 S.W. 289.

■ The court admitted in evidence testimony of Lewis Barclay, over the objection of the insurance company, that one Nichols, an adjuster for the Traders & General Insurance Company, after Rufus Parker suffered the injury in question, went to the scene of the accident and examined the nature of the accident and the facts and circumstances surrounding the employment of Rufus Parker. The objection made to the admission of the testimony was that it was irrelevant and immaterial, and prejudicial to the interest of the insurance company, in that it would probably lead the jury to believe that the insurance company then recognized that Rufus Parker was an employee of the Daniels Drilling Corporation, to whom it had issued its policy. The court overruled such objections and admitted the testimony, and appellant, by its third proposition, insists that in the admission of such testimony the court committed reversible error.

We overrule appellant's contention. Appellees contend that they offered such testimony for the purpose of showing that the insurance company had notice of the injury within thirty days after the happening thereof, as required by article 8307, Revised Statutes, and that it was admissible for such purpose. They also insist that if its admission was error, it would not be cause for a reversal of the judgment because substantially the same evidence was given by the witnesses B. I. Daniels and Poyner Johnson without objection of appellant.

We agree with the contention of appellees that under the facts as stated, which we find to be true, the admissibility of the testimony of Lewis Barclay complained of constitutes no reversible error. 3rd Texas Jurisprudence, § 880, p. 1258; Texas Jurisprudence Supp. (1934) § 880, p. 238; Chicago, R. I. & P. Ry. Co. v. Harris (Tev.Civ.App.) 28 S.W.(2d) 611, at page 616, and cases there cited.

■ In the opening argument to the jury, W. J. Park, one of the attorneys for appellees, used the following language: "The testimony is undisputed that a $300.-00 premium was paid and the policy issued to the Daniels Drilling Corporation."

Such argument was objected to by counsel for appellant upon the grounds that it was not relevant to any issue submitted to the jury and was an appeal to the prejudice and passion of the jury and an appeal to find that Rufus Parker was an employee of Daniels Drilling Corporation merely because the premium had been paid by the corporation to the insurance company. The court overruled the objections to such argument, and appellant assigns the action of the court as reversible error.

We overrule appellant's contention. It is apparent that the argument was but a true statement of the facts shown by the undisputed evidence. There was in such argument no suggestion, either expressed or implied, that the jury should find that Rufus Parker was an employee of Daniels Drilling Corporation because said corporation had paid the $300 premium to procure the policy issued to it by the appellant. In view of the evidence as a whole, we think it not probable that such argument affected the verdict of the jury to the prejudice of appellant.

In closing the argument for the cross-plaintiffs, Parker and wife, J. D. Pickett, an attorney for cross-plaintiffs, used the following language:

"The Insurance Company, chartered by the State of Texas to do business in this State and put out its obligations to the citizens of this state, requiring it to pay them, or their legal beneficiaries in case of death, the same salaries agreed to in the contract, in the event that laborers, toiling at various classes of labor that people of Texas follow, shall have in event they get injured or killed in the course of their employment, is in the courthouse before you today, asking you to relieve them of the liability that they assumed under this contract. Now, there is no dispute that they made that contract. There is no dispute that Rufus Parker was an employee of somebody. There is no dispute that he, a soldier in the Industrial Army, met his death in the course of his employment, and his voice is closed and we can't get his testimony here as to whether he knew who he was working for, and who he had a contract with. There is no dispute about the value of his labor, the price of his hire. There is no dispute about anything that we have the proof on in such manner that the Insurance Company can't dispute it. And the only fact connected with this whole transaction that they can dispute, and stand in the court-

house and deny, with any show or reason or plausibility at all, is the point on whether he was working for W. L. Barclay, or whether he was working for somebody else, and they had a chance to dispute on that. That is the basic ground of this lawsuit, on that point."

"It is absurd on its face. Gentlemen, there is enough material facts in this case that a lawyer who cared to do so, and who cared to inflict on the jury that much punishment, could talk to you until the morning sun comes up, and show you what an unusually absurd position this insurance company has taken here in this case, in advocating to you how these questions ought to be answered. 'Question No. 1. Do you find from a preponderance of the evidence that the said Rufus Parker, deceased, was an employee of the Daniels Drilling Corporation at the time he received the injuries that caused his death, as the term "employee" is defined in this charge,' you have the evidence. You know who is on the other side."

"Now, then, they make a great deal of holler, and it is significant in this case that the man that they bring down here to take the virtues out of the evidence in behalf of the defendants in this case, is an ex-railroad claim agent. That man told you his duty required him to spend his time getting up evidence on one side of a case. I don't say that a railroad claim agent can't be an honest man. I don't say that, but I say this, that if a man were hunting for somebody to get up testimony to get him out of a bad place, or to repair a weakness in his case, the Traders & General Insurance Company certainly did know where to go to when they went straight to an ex-railroad claim agent. Now, they ask you to believe that man's evidence."

Appellant made no objection to the arguments made by counsel at the time they were made, but two days after the rendition of the judgment in the cause it filed its motion for new trial, and in such motion, for the first time, urged its objection to such arguments.

By appellant's proposition No. 5 it contends that in the argument complained of Mr. Pickett asked the jury, when considering their answer to special issue No. 1, inquiring as to whether Rufus Parker was an employee of Daniels Drilling Corporation, to take into consideration the fact that the insurance company was on the other side. It then, assuming that it had correctly stated the language used in the argument, further contends that such argument was inflammatory and encouraged the jury to render a verdict regardless of the evidence, and upon such assumption contends that such argument constitutes reversible error.

We overrule appellant's contention as to the language used in the argument here referred to, or that the language in fact used constitutes cause for a reversal of the judgment rendered. We have already set out the language used by Mr. Pickett and will not repeat it here. Appellant's objection to the argument is shown in its bill of exceptions, in which the argument is accurately stated. Such bill was approved by the court with the qualification that it was provoked by the arguments made by counsel for appellant, such arguments being in effect that the Traders & General Insurance Company did not want to pay a claim for which it was not liable; that Frank Parker and wife, opponents to the insurance company, had no cause of action against it; that in fact the insurance company was not interested in depriving claimants of compensation, "that the Mont Alba boys are interested in the case in seeing that the right insurance company pays the compensation and that these boys wanted to see Mr. Parker get compensation."

Mr. Greenwood stated in his argument, to which Pickett was replying, that the Mont Alba boys were interested in the case and had feelings in it and did not want to deprive Mr. Parker of compensation, but wanted the right insurance company to pay it. Thus Mr. Greenwood insinuated before the jury that probably some other insurance company might be liable to the claimants, while it is apparent from the facts that no other insurance company had any interest in the matter. There was no insurance company involved other than the Traders & General Insurance Company.

It appears from the testimony of the Mont Alba boys, above referred to, that for some reason they were hostile to Parker and wife; however, the trial court heard all of the arguments of all attorneys and the trial court was in a better position to more fully judge who Mr. Pickett was referring to than anybody else, when Pickett said: "You know who is on the other side." It is perfectly clear that Mr.

Pickett was referring to the Mont Alba boys who testified for the insurance company and to Jack Coghlan, and meant that the Mont Alba boys and Jack Coghlan were on the other side and that the jury knew their feelings in the matter and had observed their conduct, and that the jury could determine whether to believe the Mont Alba boys and Coghlan's testimony, or whether to believe the witnesses for Frank Parker and wife. The argument was clearly one directed to the credibility of the witnesses. For example: To show that Pickett was referring to the Mont Alba boys and Jack Coghlan when he said "you know who is on the other side," he said: "I am not allowed, I wouldn't if I could, say anything against the character of any of the young men in Anderson County, here, but it is enough for you to know that the attorney representing the Insurance Company indicated in his argument that they had an interest in this case, and they had feelings as to how they wanted a verdict rendered in this case. I hope that isn't so, but Mr. Greenwood indicated it, but I hope he is mistaken. But here you have the evidence of these other men who have no such motive as that, no feeling, and no reason under the shining sun for getting up a conspiracy, and for committing perjury, saying that all these things they testified to did happen."

It will be noted that Mr. Pickett did not say that an insurance company was on the other side. It was perfectly apparent to the jury that the Traders & General Insurance Company was the main and only defendant in the case. It seems to us that in the argument complained of, Mr. Pickett was attacking the credibility of the Mont Alba boys on the ground that they had a grudge against Barclay and Daniels and therefore testified on the opposite side from Daniels and Barclay.

■ Now, with reference to argument concerning the witness Coghlan, Messrs. Reeves and Greenwood, attorneys for the plaintiff, had both, preceding the argument relative to the testimony of the witness Jack Coghlan, vigorously attacked the credibility of all of the claimants' witnesses, and stated that they were all interested with Barclay and Daniels in trying to prove that Daniels Drilling Corporation had taken over the pay roll, and stated that Parker's witnesses were not

stating the truth. Mr. Pickett was merely replying to such attacks of appellant's attorneys upon Frank Parker's witnesses and their contention that the plaintiff's witnesses, including Coghlan, told the truth. Furthermore, the argument objected to in the sixth proposition about Jack Coghlan's experience as a railroad claim agent was based on Coghlan's own evidence. The argument of Mr. Pickett that "the Traders & General Insurance Company certainly did know where to go when they went straight to a railroad claim agent to repair a weakness in its case" was followed by this statement, "now they ask you to believe that man's evidence."

Coghlan's past experience as a railroad claim agent, and the duties which he performed, were testified to by himself, and they were certainly proper subjects of argument as to his credibility. Furthermore, the argument complained of in the sixth proposition was not objected to at the time it was made, but was objected to for the first time in the motion for a new trial, filed January 24, 1934. Emberlin v. Wichita Falls, R. & Ft. W. Ry. Co. (Tex.Com.App.) 284 S.W. 539.

■ Improper argument to a jury should not of itself furnish reason for reversal, unless the preponderance of the evidence seems against the verdict, or there is reason to believe the verdict is excessive by reason of such argument. Jackson v. Jackson (Tex.Civ.App.) 35 S.W.(2d) 830. The Supreme Court in Railway v. Irvine, 64 Tex. 535, held that an improper argument, within itself, furnishes no sufficient reason for reversing a judgment; that it is only in cases in which the preponderance of the evidence seems to be against the verdict, or where the verdict seems to be excessive and there is reason to believe the verdict may have been affected by such improper conduct, that it becomes a ground for reversal.

■ Question No. 3 submitted to the jury reads as follows: "What amount of money do you find, from a preponderance of the evidence, would be just and fair to both parties as the average daily wage for the kind of work that the said Rufus Parker was doing at the date he received the injury which caused his death? Let the amount of money, if any you have found, be written in figures."

The jury's answer to such inquiry was, "$3.50." Appellant insists that the trial court erred in submitting such inquiry, in

that (1) it was not authorized by the evidence; (2) the claimants had failed to prove by any positive testimony that it was impracticable to compute the average weekly wage under the provisions of first subsections 1 and 2 of section 1 of article 8309 of the Revised Civil Statutes, and that the submission of the issue in such manner constituted an error prejudicial to appellant, for that the question properly to be determined is, what would be a just fair average daily wage; that because of such error the judgment should be reversed and the cause remanded.

We overrule such contentions. The evidence shows that Rufus Parker, deceased, did not work in the same or similar employment in which he was engaged at the time of his death for "substantially the whole of the year" next preceding his death. It further shows that there were no other employees who worked in the same or similar employment in the same or in a neighboring place for "substantially the whole of the year" next preceding the date of Rufus Parker's injury and death. There is no complaint by appellant that the issue of wages should have been submitted under either subsection 1 or subsection 2 of section 1, article 8309, R.S. Appellant contends under the seventh, eighth, and ninth propositions, as we understand, that the trial court did not properly submit the issue of wages under first subsection 3, § 1, article 8309, R.S., that is, appellant says that the court should have asked the jury to find what would be average weekly wage that would seem just and fair to both parties, rather than what would be an average daily wage that would seem just and fair to both parties.

Appellant objected and excepted to the court's charge as it was first prepared upon the ground that it was error to submit the question of average weekly wages, but rather the average daily wages of the deceased; thus it is seen that appellant's exceptions were directed to the court's action in submitting the wage question under first subsection 3 of section 1, article 8309, R.S. Appellant objected that the proper manner to submit the wage question under first subsection 2, § 1, art. 8309, R.S., is to ask the jury about the average daily wage of the deceased rather than the average weekly wage. The court then submitted the issue as to the average daily wage.

The judgment rendered shows the exceptions and objections to the court's charge upon the wage issue under first subsection 3, section 1 of article 8309, R.S., and the judgment shows that the court calculated the average weekly wages of Rufus Parker, "in the manner provided by law" based upon the jury's finding as to average daily wage. There was abundant evidence that the usual and customary wages paid in various parts of Texas to oil field workers, performing the same kind of work which Rufus Parker was doing when he was killed, was from $5 to $6 per day, and that it was usual and customary for oil field workers, similar to Rufus Parker, to actually work seven days per week, due to the necessity of not interrupting drilling operations.

The courts have held in several instances that the proper issue to submit is that of the average daily wage instead of the average weekly wages, since the latter is to be computed by the board, or, on appeal, by the court. However, if there was error in this respect, appellant has clearly invited it, and is likewise estopped to complain of same because appellant actively induced and led the court into the alleged error by reason of its exceptions, as shown in the court's judgment. Texas Jurisprudence, Vol. 3, § 731, and § 733, at pages 1031 and 1033, respectively, and likewise in Texas Jurisprudence, 1934 Supp., § 731, p. 191, where the leading cases are cited on the point.

Other cases announcing the same rule are: St. Louis, S. W. Ry. Co. v. Hudson (Tex.Com.App.) 17 S.W.(2d) 793; Askey v. Power (Tex.Com.App.) 36 S.W.(2d) 446; Texas Employers' Ins. Ass'n v. Brock (Tex.Com.App.) 36 S.W.(2d) 704; Berryman v. Norfleet (Tex.Civ.App.) 41 S.W.(2d) 722; Bradley v. Ry. Co. (Tex. Com.App.) 1 S.W.(2d) 861.

We have reached the conclusion that the judgment should be affirmed, and it is accordingly so ordered.

Affirmed.