PRICE, Chief Justice.
This is an appeal from a judgment of one of the District Courts exercising jurisdiction in Dallas County. This judgment established and foreclosed in favor of the plaintiff, G. W. Wiebusch, a mortgage lien on certain property in Dallas County, for the sum of $94,170.81, as to Powell University Training School, a corporation, Nathan Powell, Florence Powell, Minnie Powell, M. J. Peurifoy and husband, P. G. Peurifoy. The case was tried by the court with a jury, and on the verdict and independent findings, judgment was rendered as above stated. Defendant P. G. Peurifoy perfected this appeal. The case is here, transferred by the Supreme Court from the Dallas Court of Civil Appeals.
This is the second appeal of the case. A detailed statement of the nature and history of the litigation prior to the second trial is set forth in the following reported cases: Thomason v. Wiebusch, Tex.Civ. App., 89 S.W.2d 452 and Peurifoy v. *621 Wiebusch, 132 Tex. 36, 117 S.W.2d 773. In view of this fact, the prior history and nature of the litigation will be set forth as briefly as possible.
This case was instituted on January 9, 1931, by G. W. Wiebusch, Nathan Powell, Minnie Powell and Powell University Training School against G. W. Thoma-son. It was a trespass to try title action in which plaintiffs sought to recover title and possession of the property in question here. Thomason answered and filed a cross action. Thereafter, on May 15, 1931, P. G. Peurifoy filed an intervention setting up title to the property. Plaintiffs went to trial on their third amended original petition. All the rights asserted in that trial and the trial here by Wiebusch were founded on a certain deed of trust from Powell University Training School to him. This deed of trust is dated August 16, 1928. It recites that while the conveyance is made to Wiebusch as trustee, it conferred upon him the power of managing, selling and conveying the land just as though he were the owner in fee simple. This deed of trust was executed and delivered under and by virtue of the authority of a resolution of the Board of Directors of the Powell University corporation. Among the provisions of the resolution, the following appear:
“That this Deed is given to said G. W. Wiebusch, Trustee, in part liquidation of the affairs of the corporation preparatory to the surrender of the corporation charter with the State of Texas and to assure the payment of 2 certain deeds of trust notes payable to the order of G. W. Wiebusch on the above described property.
“1 note dated April 14, 1927, in the principal sum of $20,000.00 due 5 years after date bearing interest at the rate of 8% per annum interest due semi-annually, interest on same paid to October 14, 1927, and one note dated November 8, 1927, for $2,000.00 due April 14, 1932, bearing interest at the rate of 8% per annum interest due semi-annually.
⅜ ⅛: ⅜ ⅜ ⅝
“That after the sale of the above lots by the said G. W. Wiebusch, trustee, and a balance of cash or notes in hand after paying the above described 2 notes to the said G. W. Wiebusch together with interest at the rate of 8% per annum note payable semi-annually and payment to the said G. W. Wiebusch, trustee, all advances on open account now due or hereafter due and paying the expenses of management hereto such as sales commissions, taxes, paying assessments and other expenses incidental thereto, then the said balance if any is hereby assigned and transferred to Minnie E. Powell who is hereby authorized and empowered to receive same free unto herself.”
Powell University Training School was a corporation with a capital stock of $50,-000, divided into 500 shares. Nathan Powell at all relevant times owned 498 shares thereof, his daughter one share and his wife one share. The Powells constituted the board of directors of the corporation. The corporation was dissolved on November 28, 1928, by a decree of the District Court of Travis County, cancelling and forfeiting its. charter at the suit of the State. No receiver was ever appointed to wind up its business.
In the former appeal of .this case we held, among other things, that the deed of trust constituted a mortgage and conveyed no title to Dr. Wiebusch, but denied to Peurifoy a judgment for the possession of the property. See Thomason v. Wiebusch, 89 S.W.2d 452, supra. Writ of error was granted by the Supreme Court in the case, and the judgment entered on the first trial was disposed of by that court, Peurifoy v. Wiebusch, 132 Tex. 36, 117 S.W.2d 773, 776, supra. The concluding paragraph of the opinion of the Supreme Court represents the judgment of that body, and mandate issued in accordance therewith. It was there said: “Accordingly, the judgments of the Court of Civil Appeals and the district court are reversed and judgment is here rendered in favor of plaintiff in error Peurifoy against defendant in error Wiebusch for the title and possession of the property in controversy, subject, however,, to a lien on said property to secure the payment of so much of the indebtedness of Powell University Training School to Wiebusch described in the said resolution as is unpaid; and the cause is remanded to the district court, with direction that the pleadings be amended, the issue as to payment of the notes tried, the amount of the indebtedness determined, and judgment rendered foreclosing the lien.”
The trial court, after the mandate was filed, again obtained jurisdiction of the case, which had been divested by the perfection of the appeal. This jurisdiction *622 Was circumscribed and limited by the mandate. The. authoritative .judgment of the Supreme Court determined all other matters.
In accordance with the direction of the Supreme Court, the pleadings' were amended before the second trial. The trial court on that trial scrupulously adhered to this mandate. ■ The judgment disposes of the only issues in the case such court was authorized to try. In • accordance with the verdict finding the notes unpaid, the judgment decreed a foreclosure of the lien as to the notes. The other indebtedness referred to in the resolution in the Supreme Court’s opinion was not in its entirety submitted to the jury. As to the matters un-submitted, the court made its own findings. The judgment decrees a general indebtedness of $4,806.31. The next item of indebtedness is $7,908.70, representing taxes paid by plaintiff Wiebusch on the property in question.
Appellants assert that the $20,000 note and the $2,000 note were, as a matter of law, barred by limitation; that no suit was ever filed on said notes until the 23rd day of June, 1939, the date of the filing of plaintiff Wiebusch’s fourth amended original petition; that all other items allowed were, as a matter of law, barred by limitation. Hence the judgment should be reversed and rendered in their favor. Further, this suit could not be maintained against a dissolved corporation; in the alternative, that the items of indebtedness, other than the notes, were not shown to exist by the undisputed proof, hence same should have been submitted to the jury in order to form the basis of a judgment, and the case should be reversed and remanded. Complaint is made as to argument of counsel and as to alleged misconduct of the jury.
The two notes involved, by their terms, matured April 14, 1932. This suit was filed prior to that time. But it is asserted that these two notes were not sued upon until June 23, 1939, the date plaintiff Wie-busch filed his fourth amended original petition, and in which he was the sole plaintiff, and the Powells, the School and Peuri-foy, were defendants.
The third amended original petition was filed May 19, 1932. This was the pleading upon which the first trial of the case was had. The mandate of the Supreme Court was issued on the 27th day of April, 1939, and filed in the District Court of Dallas County on the 28th day of April, 1939.
Now it is clear that if appellants be correct in the assertion that these notes were, not in litigation prior to the filing of the fourth amended petition subsequent to the issuance of the mandate, these notes, absent jurisdiction by the Supreme Court and the other indebtedness, would be barred by limitation. The Supreme Court does not in the opinion discuss the question of limitation. In the course of the opinion it is said: “It follows that if any of the debts of Powell University Training School to Wiebusch described in the resolution which authorized the conveyance to him are unpaid, Wiebusch has a lien on.the property in controversy to secure the payment of such debts as are unpaid and that the title acquired by plaintiff in error Peurifoy is subject to the lien.”
We literally construe, from the opinion, that the right to the lien was to depend on whether an unpaid indebtedness existed. Further, in the opinion it is said: “In his petition in the trial court Wiebusch sought first to recover title and in the alternative to establish and enforce a- lien securing debts. The trial court evidently concluded that the deed gave him title and accordingly rendered judgment in his favor for title and possession. The effect of this judgment was to deny him recovery on the cause of action alleged in the alternative.”'
Here we have a construction of the third amended original petition — a construction which, we think, was necessary to the disposition of the case. Unless Wie-busch had a lien that he was entitled to assert against the property in the hands of Peurifoy, the reversal and remand of the case would be a futile thing. It is hardly to be thought that the Supreme Court was not of the opinion that Wiebusch asserted in the alternative equities, rather than title, against the property in Peurifoy’s hands. In this respect we do not regard the contentions of appellants, that because Thom-ason was the only defendant in the original suit and the Powells and the dissolved corporation were plaintiffs with Wiebusch that no suit was filed on the notes or open account until the amendment of June 23, 1939, as a matter of serious moment. Unless the legal title to the property was vested in Peurifoy, some of the plaintiffs had the right to the possession of the property. As to the intervener Peurifoy, the third amended original petition asserted the in *623 debtedness and lien. In the alternative, the prayer was that the indebtedness to Wie-busch be established and a lien be declared and he be permitted to foreclose same in accordance with the provisions of the instrument creating the lien. This prayer was denied by the judgment of the Supreme Court. However, he was accorded the right to seek the remedy of a judicial foreclosure. It was, we think, an assertion of the indebtedness and an alternative prayer for relief based thereon.
In the disposition of the case in the trial court the question of the indebtedness was not passed upon. Hence, the judgment could not be reversed and rendered by the Supreme Court. If the equities of Wiebusch were asserted in the third amended original petition, then the suit interrupted the running of the statute of limitation — interrupted the statute so long as this suit continued to pend with good faith and intention on the part of the plaintiff to prosecute same.
In examining the third amended original petition of plaintiff, independent of the construction thereof by the Supreme Court, we are of the opinion that same asserted the validity of plaintiff’s debt and the liability of the property in the hands of Peuri-foy to the lien created by the deed of trust. It is very inartificially drawn. It consists of numerous exceptions to the defensive pleading and cross action of the defendant Thomason; the same as to the intervention of Peurifoy. But no point seems to have been made in the first trial as to these matters.
Again returning to the question of the Powells and the dissolved corporation as party plaintiffs, rather than defendants.— now, if the Powells had the legal title to the property, as was authoritatively decided to be the case, it was certainly to the interest of the School and the Powells that it be subject to the indebtedness of Wie-busch. It may be that by virtue of the dissolution of the corporation that the parties plaintiff, other than Wiebusch, were mere trustees as to the payment of the indebtedness. But still, as such, they, we think, had the right and duty to see that the property of the defunct corporation was devoted to the just claims of the creditors.
We deem it immaterial to determine whether the dissolved corporation could be sued. The proper parties were before the court to authorize the judgment rendered.
As has been stated, the judgment as to the indebtedness, other than the notes, placed the other indebtedness in two classifications. The first was for taxes paid by Wiebusch on the property in controversy. This was found by the judgment to be the sum of $7,908.70. These items were not submitted in any particular to the jury. Numerous receipts from the County Tax Collector of Dallas County and of the City of Dallas verifying the payment of these taxes by Wiebusch were introduced.
Appellant has been a party to this suit since 1932, and he and his predecessor asserted title to this property prior to that date. It is not shown that he has paid one cent of the taxes accruing against the property. Wiebusch, from the.date of the deed of trust, and prior thereto, for that matter, had an interest in the property which would have given him a right to pay the taxes .in .protection thereof. The assessment and payment of taxes are evidenced by public records. If the testimony of Wiebusch, although interested, that he had paid these taxes was untrue, there was a ready means of refutation.
We think the payment of these taxes by Wiebusch was not an issue. It was established, as a matter of law, and the court was correct in not submitting the issue to the jury.
The other indebtedness was in the sum of $4,806.31, and is described as “general indebtedness,” the balance of the principal amounts on the several advancements made by plaintiff. Of this total sum, $1450 thereof was submitted to the jury. No complaint is made here with reference to the manner of the submission. However, it is vigorously asserted here that the validity of the items of indebtedness depending on the testimony of Wiebusch, an interested witness, an issue was at least presented for the jury, and the court was not authorized to make a finding thereon and base a judgment on such finding. This question was not raised in the motion for new trial, but was raised in appellants’ motion for judgment.
It is well established that, ordinarily, where the establishment of an issue depends solely upon the testimony of an interested witness, such testimony leaves the issue for the determination of the trier *624 of the facts. There are exceptions to this rule: where such testimony is clear and uncontradicted, and if untrue readily susceptible of contradiction; also where the testimony is as to facts which are susceptible of éxact knowledge on the part of the witness and not in the nature of a conclusion, such as a statement of value or the like. Likewise, this rule does not apply where there is other testimony in the record strongly corroborating the uncontra-dicted and unimpeached testimony of the interested witness. San Jacinto Rice Co. v. Ulrich, Tex.Civ.App., 214 S.W. 777; Federal Surety Co. v. Smith, Tex.Com. App., 41 S.W.2d 210; Heiner v. Homeland Realty Co., Tex.Civ.App., 100 S.W.2d 793, and authorities there cited.
A finding that the unsubmitted items comprehended in the sum of $4,806.31 were not owing would be without support in the evidence. It would be a disregard of undisputed, unimpeached and corroborated testimony. In our opinion the evidence raised no issue as to the validity of the indebtedness found by the court under the designation of “general indebtedness,” aggregating about the sum of $4,806.31. Indeed, a careful consideration of the evidence convinces us that the trial court would have been justified in entering judgment for a substantially larger amount than was allowed for “general indebtedness.” There was corroborating evidence as to the items of indebtedness testified to by Wiebusch.
We come now to a consideration of the question as to argument of counsel and misconduct of the jury.
The assignment as to argument of counsel is evidenced by two bills of exceptions relating to the same matter. . Appellee contends the bill prepared by the court is controlling; appellants, that their bystander’s bill governs. Appellants tendered a bill of exceptions to the trial judge relating to this argument, who refused to approve same, and made up and filed a bill of exceptions in accordance with Rule 372. The appellants filed a bystander’s bill in accordance with Rule 372. This bill was supported by the affidavits of three persons attesting the bill filed as a bystander’s bill. Appellee filed no controverting affidavit. It appears to us that the rule which allows appellants to file their tendered and rejected bill of exceptions was at least substantially observed. Under the terms of the rule, their tendered bill being rejected, they had then the privilege of a bystander’s bill. This bystander’s bill is attested by three affidavits. Appellee had the privilege of contesting the correctness of the bill filed by appellants. This he did not do.
By the terms of the rule, the Court of Civil Appeals is to determine as to the correctness of the bill from the affidavits on file. The issue to be tried was the truth of the bystander’s bill. If found to be true, the bystander’s bill governs, is the inescapable inference from the rule. Appellee contends that we may look to the bill filed by the court in determining the truth of the bystander’s bill. If we thought this to be correct, we will say that, without hesitation, we would here follow the bill filed by the trial court. This, not because of any evidence in the record as to the unworthiness of credit of the three gentlemen making the affidavits as to the correctness of appellants’ bill. It is clear that the trial judge had this very matter called ■to her attention and ruled upon it. We think she was in a better position to know the facts and impart them truly through the bill than the gentlemen making the affidavits supporting the bystander’s bill. This entire record attests the great ability and strict impartiality with which this trial was conducted by the trial judge.
In reference to this matter ap-pellee, to support his contention, relies on the case of Wells et al. v. Lone Star S. S. Co., Tex.Civ.App., 1 S.W.2d 923, writ denied. This case was tried before Rule 372 was made by the Supreme Court. However, in all essential particulars the then governing statutes were incorporated in the present Rule 372. From the opinion in that case, it does not appear that the bystander’s bill was supported by affidavits. In order to file the bill it was necessary, under Art. 2237, to have the correctness of the bill attested by the signature of three respectable bystanders, citizens of the State. In the opinion it was stated the bill was attested by the signatures of the required three bystanders. It is not stated that its correctness was supported by affidavits. It may have been, but, if so, it does not so appear from the opinion. Further, it was held that, in legal effect, there was no real conflict between the bystander’s bill and the bill filed by the court. A request to have the jury polled as to certain issues was held to legally amount *625 to a request to have the jury polled as to their verdict. If there appeared in this record the bystander’s bill attested only by the signatures of the three respectable citizens, we would feel free to accept the bill filed by the trial judge. In this record the bill is supported by three uncontroverted affidavits. Rule 372 provides the issue is to be tried on the supporting and controverting affidavits. Under this rule the relevant evidence is undisputed and uncontra-dicted as to the correctness of appellants’ bill, and we must accept same and be governed thereby. This holding, we think, in no way conflicts with the case of Wells v. Lone Star S. S. Co., supra.
The bystander’s bill reflects the following: Mr. Joe Worsham, one of the attorneys for the plaintiff, in the presence of the jury, during his argument to the jury, which was the closing argument made in said case, produced and exhibited in the presence of the jury what he said was an adding machine strip containing a long list of figures and items, and which he said showed the total of such figures and items, and at said time made the statement to the jury that he personally had made the tabulation of the checks of G. W. Wiebusch, plaintiff herein, both those in evidence and those not in evidence (pointing to his files on the table), and that he personally had run up all of said items on an adding machine, and that the total thereof as shown by said list amounted to more than $116,-000, not including interest, and that the total credits amounted to $70,000 (odd), and he further stated that said tabulations were made from the statements of account furnished to P. G. Peurifoy, sixteen in number, in 1939. That these defendants personally, or their attorneys, though permission was requested, were not at said time or at any time permitted by Mr. Worsham or his son, Mr. Irion Worsham, to whom said strip had been delivered, to see said adding machine strip or any item of it. The bill shows further that appellants objected to the arguments and excepted to the ruling of the court overruling their objection, substantially on the ground that it was testimony offered by Mr. Worsham, not under oath, and that they had had no opportunity to see the strip and no opportunity to cross-examine Mr. Worsham with reference thereto; that said strip was not in evidence. The numerous items thereon and the total thereof, the checks and accounts, were not in evidence, were totally unknown to the defendants or to the jury, were outside of the record and evidence introduced in the trial of this cause, and were highly prejudicial.
The argument, as shown in the bill, in itself demonstrates that in arriving at the amounts paid out, checks were taken into consideration that were not in evidence. While it is not thought that the mere computation of the aggregate of amounts as to which there was evidence would be error, we are driven to the conclusion that in including in that aggregate items not in evidence, error was committed, even though there was evidence tending to support some of the checks not in evidence.
We may remark in passing that the bill, as filed by the trial court, reflects that in stating the aggregate, Mr. Worsham referred solely to the testimony.
In appraising the effect of this erroneous argument, it is necessary, in a general sort of way, to consider the case as submitted.
We have held that there was no error in the court finding, as a matter of law, the indebtedness found as to the taxes and indebtedness on open account. On this latter indebtedness, items aggregating $1,450 were submitted to the jury. In the manner these items were submitted, we can hardly see how this argument could have had any improper influence on the jury. In substance, it related to the application of three sums of money, $1,000, $350 and $100, for which Wiebusch had issued his checks to Nathan Powell. The argument would seem, to us to have no relation in any way to these three issues. Several issues were submitted relating to the question of limitation. This issue, we think, was not in the case. These matters were put in issue by the third amended original petition of plaintiff.
The main issue in this case, after all, was, whether or not the $20,000 and $2,000 notes had been paid. The decision of the Supreme Court in this case was that the recital in the two instruments executed by Wiebusch that the notes had been paid, raised an issue of fact as to their payment. It is not contended that the argument had any reference to other than the indebtedness claimed by appellee in addition to the notes. The position is that in order to do justice in the case, the jury may have found that on account of the large balance *626 due, which was not submitted to them, the notes were unpaid. This is at best a somewhat vague surmise.
The books of appellee were in evidence. Morgan, the auditor, testified, in substance, that all items therein were supported by checks and vouchers. Many checks were in evidence. Some checks referred to in evidence were tendered to appellant during the course of the trial. The totals given in the argument were in accord with the two record books of appellee. The only vice we can find in the argument is that counsel stated that checks in evidence and not in evidence supported the charges. Of course the reference to checks not in evidence should not have been made. We cannot see how the argument could have injured appellant as to the issue of payment. The verdict of the jury on the issue of payment is supported by ample evidence. The only evidence that they were unpaid is the recital in the releases dated August 20, 1929. If the notes were paid prior to August 20, 1929, they were paid almost three years before they were due. If paid, the question naturally arises, when and how. The date of the notes was August 14, 1927, due five years after date. On August 16, 1928 the deed in question here was executed. If paid at all, it must have been between August 16, 1928, and August 20, 1929. It is true, on August 8, 1929, Nathan Powell entered into a contract with Mrs. Wendroth for the sale of Lots 1, 2 and 3, Block C, the former homestead of Mr. and Mrs. Powell, which had been theretofore deeded to appellee. The sale price was approximately $26,500, which appellee admits crediting to the Powell University Training School. The evidence shows that this transaction was not closed until October 18, 1929. There is likewise a contract in evidence between appellee, Nathan Powell and Thomason for the sale of the lots in controversy here. This contract was never consummated. Appellee testified that the release in question was signed by him and sent to one Hancock in order to comply with the contract to give Thomason a clear title to these lots when the time for the consummation of the sale arrived. To us, this presents a rather convincing explanation of the admission in the releases. Appellee’s conduct has been consistent with this explanation. Since 1928 he has paid the state, county, city and school taxes on same, amounting, without interest, to $6,859.34. Appellee produced the notes on the trial. In our opinion a verdict affirming that these notes were unpaid was supported by a decided preponderance of the evidence. We seriously doubt that the trial court or this court would have been warranted in allowing to stand a verdict that these notes were unpaid.
The deed of trust in question here was dated August 16, 1928. At that time the corporation was on the eve of dissolution. This instrument was made in contemplation of the dissolution of the corporation. All of the property to which it had title was heavily encumbered. From its organization in 1920 to its dissolution by court decree in November, 1928, it was apparently in financial straits. It ceased to function as a school in 1923. We hold that this argument, improper though it was, does not constitute reversible error. Ringling Bros., etc., v. Wilkinson, Tex.Civ. App., 83 S.W.2d 705; Traders & General Ins. Co. v. Parker, Tex.Civ.App., 91 S.W. 2d 503; Bush v. Gaffney, Tex.CivApp., 84 S.W.2d 759.
In regard to the point of appellants that the judgment should be reversed on the ground of misconduct of the jury, in that the jurors agreed among themselves, before any special' issues were answered and during the discussion on particular issues, that appellee was entitled to recover herein, that all of said special issues should be answered by them in such a way that appellee would recover, and that such agreement was carried out, there was evidence taken on appellants’ motion for a new trial. The strongest that can be said in appellants’ favor is that the issue was raised by the evidence. The trial court heard the evidence, solved the conflict in favor of appellee. This is final as to the matter. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Texas Employers’ Ins. Ass’n v. Chocolate Shop, Tex.Com.App., 44 S.W.2d 989.
In our opinion the finding of the trial court as to misconduct is strongly supported by the evidence appearing in the statement of facts on the motion for a new trial. We find no reversible error in the case. It is therefore affirmed.
WALTHALL, J., not participating.